HELEN S. WEST *vs.* EBEN S. POOR & trustees.
JOHN B. WEST *vs.* SAME.

Essex.    May 13, 1907. — June 20, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & RUGG, JJ.

*Negligence,* Licensee.

If a milkman, returning to his wagon after delivering milk at a house, finds in the wagon four children, whom he frequently has given rides, and, instead of turning them out, drives ahead to his next stopping place with the children in the wagon, they are not there by his invitation, and if one of them, a girl five years of age, is injured from the horse's starting while the milkman is helping her out, she cannot hold him liable for her injuries, even if they were caused by a want of ordinary care on his part.

TWO ACTIONS OF TORT, the first by a child, by her father and next friend, for personal injuries received on September 13, 1905, in the manner stated in the opinion, and the second

by the father of the plaintiff in the first case for expenses incurred for surgical treatment and care by reason of her injuries. Writs dated February 10 and 24, 1906.

In the Superior Court *Wait*, J., ordered verdicts for the defendant ; and the plaintiffs alleged exceptions.

The case was submitted on briefs.

*T. S. Herlihy & R. E. Burke,* for the plaintiffs.

*J. H. Casey, N. N. Jones & E. Foss,* for the defendant.

MORTON, J. The defendant supplied milk to the plaintiff's father, and on the morning of the accident, as he came back to his wagon from delivering milk at a house near by, he found in the wagon the plaintiff, who was a little more than five years of age, her sister, between two and three, and two others, of seven and four respectively, children of a neighbor and playmates of the plaintiff. The wagon was what is known as a low-down closed milk wagon with doors at the sides and the floor about a foot from the ground. The defendant had frequently given the children a ride. The defendant drove a short distance and then stopped, and the two other children got out. The horse started up before the plaintiff and her sister got out, and the defendant drove a short distance further to the house of his next customer, where he made a regular stop. He was sitting on the right hand side, with the reins in his right hand, and the children were on the seat at his left, the plaintiff being next to the door. The defendant attempted, with the reins in his hand, to help the children out, and after he had taken the plaintiff by the arm to help her out, and while he was trying to take care of the younger child, the horse started, and in some way (the defendant could not say just how the accident happened) the plaintiff slipped or fell and the hind wheel went over her leg, causing the injuries complained of. The horse was hard-bitted and, as the defendant testified, had started " once in a while," and would not always stand still at the regular stopping places. The father of the plaintiff was at work and the mother was sick in bed under the care of a doctor and a nurse, and the younger children were in the care of their sister who was nineteen years of age. It does not appear that the older sister knew where the children were or what they were doing, though we do not regard that as especially material.

In getting into the wagon the plaintiff was an intruder or trespasser, and the defendant when he came back and found her and the other children in it could have properly ejected her, using no more force than was necessary, and having regard to her tender years. *Daniels* v. *New York & New England Railroad*, 154 Mass. 349. The fact that the plaintiff had frequently ridden in the wagon did not constitute an invitation to her to get in on the morning of the accident, however natural it may have been under the circumstances for her to do so. But by allowing her to remain, the defendant must be taken to have acquiesced in and consented to her presence. We do not think that he can be regarded as having impliedly invited her. On the contrary it was, it seems to us, as if the plaintiff or her older sister had asked the defendant or had suggested to him to take her in, as a favor, and give her a ride, and he had consented to do so. When he came back he found her and the others in the wagon, and he proceeded on his route. He did nothing and said nothing to invite them, and the nearest analogy that occurs to us is that of a self invited guest in whose presence the host acquiesces and whose enjoyment he seeks to promote, or that of a gratuitous bailee. In the former case, the degree of care required is that of licensor and licensee, (*Plummer* v. *Dill*, 156 Mass. 426, *Hart* v. *Cole*, 156 Mass. 475,) which, as has often been said, requires only that the licensor shall not set traps for the licensee and shall refrain from reckless, wilful or wanton misconduct tending to injure him. *Massell* v. *Boston Elevated Railway*, 191 Mass. 491. In the latter case, in order to render the bailee liable, it must appear that he has been guilty of culpable negligence. *Whitney* v. *Lee*, 8 Met. 91. *Nolton* v. *Western Railroad*, 15 N. Y. 444. If the standard of care required was that of a licensor or gratuitous bailee, as we think it was, it is entirely plain that there was no breach of duty on the part of the defendant. It is unnecessary to consider whether if a higher degree of care had been required, that of the ordinarily prudent man, for instance, there was any evidence that the accident was caused by the defendant's negligence.

*Exceptions overruled.*