JAMES MARTIN, administrator, *vs.* BOSTON AND NORTHERN
STREET RAILWAY COMPANY.

Suffolk.    January 10, 1909. — February 23, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Negligence*, Street railway, Gross, Causing death, *Res ipsa loquitur.*    *Evidence*, Presumptions and burden of proof, Opinion: experts.    *Practice, Civil*, Conduct of trial. *Witness*, Cross-examination.

The declaration in an action against a street railway company under R. L. c. 111, § 267, to recover for the death of a passenger who received injuries resulting in death because he jumped from the front seat of an open car of the defendant when there was an explosion in the electric controller, alleged that the death resulted from gross negligence on the part of the defendant's servants or agents. At the trial the plaintiff introduced evidence of the happening of the explosion, but did not introduce any independent evidence to show that there was anything defective or improper in the construction or operation of the car, although he did introduce evidence tending to show that previous to the explosion the car had been running smoothly, that it had stopped and started in the ordinary way, and that there was nothing unusual about it. *Held*, that under the circumstances it could not be said that the explosion of itself furnished evidence of such conduct on the part of the defendant's servants or agents as to constitute gross negligence.

While the general rule is that the final decision of the question, whether a witness is qualified as an expert, is for the judge presiding at the trial, nevertheless, when the facts upon which the decision depends are undisputed, the question becomes one of law, and the decision may be reviewed.

The fact that a witness is not offered as an expert by the party calling him will not prevent the other side from using him as such if it turns out that he has the necessary qualifications.

At the trial of an action against a street railway company for personal injuries alleged to have been caused by an explosion of the electric controller on one of the defendant's cars on a certain evening, a witness for the defendant, besides testifying at length in description of the electrical equipment of the car and of the controller in question, stated that he had examined the controller on the evening of the accident and "found it O. K." He also testified in direct examination that he was employed by the defendant as foreman of its electrical equipment from 1892 to 1903. and had been working as an electrician in the employ of another person since 1903. In cross-examination he was asked as to his experience with a controller and stated that he could take it apart and put it together again and that he understood its principle and mechanism "to a certain extent. I don't know as I understand it the same as an expert would." He then was asked certain questions which called for his opinion as an expert. The presiding judge subject to an exception by the plaintiff excluded "anything in the nature of an opinion." *Held*, that the facts regarding the qualifications of the witness were not so clear and undisputed that it could be said as a matter of law that the trial judge was wrong in excluding the opinion of the witness as evidence.

TORT for the conscious suffering and death of the plaintiff's intestate alleged to have been caused by her jumping from a street car of the defendant when there was an explosion in the electric controller.   Writ dated November 20, 1901.

The case was tried before *Gaskill*, J.   It appeared that the plaintiff's intestate was a passenger on one of the cars of the defendant running from Swampscott through Lynn to Boston. The car was an open car with a glass partition at either end. The plaintiff's intestate was seated on the right hand end of the seat directly behind the motorman with her back to the front partition and to the inside of the car.   As the car was proceeding there was a loud report or explosion followed by flashes, flames and smoke which emanated from the controller box on the front end of the car.   In the excitement which ensued, the plaintiff's intestate jumped from the car, struck the ground on her head and sustained injuries from which subsequently she died.

The course of the trial is described in the opinion.   After the rulings of the presiding judge there set forth, there was evidence introduced by both sides bearing on the questions, whether the death of the plaintiff's intestate was caused by corporate negligence of the defendant, whether she suffered consciously, and whether such conscious suffering was caused by negligence with which the defendant was chargeable.

The testimony of the witness Campbell referred to in the opinion, bearing on whether he was qualified to testify as an expert was as follows : In direct examination he testified that at the time of the trial he was an electrician working for a firm in Lynn, with whom he had been since August, 1903, that from 1892 until August, 1903, he was employed by the defendant as foreman of the electrical equipment, the electrical department at West Lynn, that as such foreman he had charge of all the electrical equipment of the cars, saw that they were equipped and, when they came in, if there was anything wrong he looked them over and repaired them or saw that they were repaired, that he put in controllers, motors and trucks, that the work of putting in motors and controllers was done under his direction and once in a while he assisted personally, that he had charge of the trucks, seeing that the trucks were in good shape and in good

order right through. He testified in great detail as to the equipment of the car upon which the accident happened. In his cross-examination questions were asked and answered as follows: " Q. What experience have you had with a controller? A. Well, I can take one apart and put it together again. — Q. Well, do you understand its principle and mechanism? A. Well, to a certain extent, I don't know as I understand it the same as an expert would. — Q. Well, you understand the principle of the electric power and also the controller to such an extent that in the event of the insulation being worn off, and that car being in motion, that that is liable to produce a friction and a flame, don't you? A. Yes, sir. — Q. You also understand the principle, do you not, of the resistance box, the effect of the burning out of one, or the removal of a panel? A. Well, if the panel was burned out and he shut his controller off it wouldn't take the arc. — Q. It wouldn't take the arc? A. No, the arc would be in the controller instead of in the panel box. — Q. And what would be the result of that, the consequence of that, assuming that the car was in motion? A. A flame or a flash in the controller would be so created that it would have to come out somewhere, having formulated a gas, that would blow out the controller cover."

There was a verdict for the defendant; and the plaintiff alleged exceptions.

Other facts are stated in the opinion.

*J. P. Fagan,* (*D. G. Hill, Jr.,* with him,) for the plaintiff.

*D. E. Hall,* for the defendant.

MORTON, J. The declaration as amended was in four counts. The third count was a statutory count for the death of the plaintiff's intestate " by reason of the negligence and carelessness of the defendant and the unfitness and gross carelessness of its agents and servants while engaged in its business "; and the fourth count was at common law for conscious suffering caused by the negligence and carelessness of the defendant and its agents and servants. The plaintiff put in his case and rested. When he rested the counsel for the plaintiff stated to the presiding judge that he relied on the third and fourth counts only and that he waived the first and second. In reply to a question by the judge the plaintiff conceded that up to that point there was

no evidence of the unfitness of the servants and agents of the defendant.  Thereupon the defendant rested as to the gross negligence and carelessness of the defendant's agents and servants as alleged in the statutory count.  The judge then ruled that there was no evidence of the gross negligence or carelessness, or of the unfitness of the defendant's servants and agents, and declined to submit the case to the jury on those issues and limited the plaintiff under the third count to the questions of the negligence of the corporation itself.  The plaintiff duly excepted, and the first question relates to the correctness of the rulings thus made.

The plaintiff relies on the doctrine of *res ipsa loquitur*, as applied to the circumstances of this case, to show that there was evidence warranting a finding that the accident was due to gross negligence on the part of the defendant's servants and agents. An accident may no doubt happen under circumstances which, in the absence of any explanation, without anything more, would warrant a finding that it could not have occurred except for gross negligence and carelessness on the part of the defendant's servants or agents.  See *McNamara* v. *Boston & Maine Railroad*, 202 Mass. 491.  But negligence to be gross must include an element of carelessness so great that the court or jury can say that there was not only an absence of the due care that should have been exercised, but also a degree of negligence materially greater than that which would constitute ordinary negligence.  No doubt what would be gross negligence under one set of circumstances might not be so under another; and no doubt, also, the highly dangerous consequences to be apprehended in one case might contribute to render that gross negligence which would not be such in another case.

In the present case the plaintiff introduced no independent evidence to show that there was anything defective or improper in the construction or operation of the car.  On the contrary the uncontradicted testimony of the plaintiff's witnesses was that, down to the instant of the explosion, the car had been running smoothly and that it had stopped and started in the ordinary way, and that there had been nothing unusual about it. Under such circumstances it cannot be said that the explosion of itself furnished evidence of such conduct on the part of the de-

fendant's servants and agents as to constitute gross negligence. The plaintiff has not argued that there was any evidence of the unfitness of the defendant's servants or agents. We think that the rulings excepted to were correct.

The plaintiff also excepted to certain rulings in regard to matters of evidence. The defendant called as a witness one Campbell, who testified that he was foreman of the electrical equipment of the defendant during a period which covered the time of the accident; and after stating what his duties were he went on to describe the construction and operation of the cars used by the defendant. He also testified that he examined the car in question on the night of the accident, and after describing certain tests that he made in regard to the controller and the result of them, he was permitted to answer without objection that the conclusion to which they led him was that the controller was " O. K." He further testified as to the condition in which he found other parts of the mechanism, and what he did in the way of causing repairs to be made. On cross-examination the plaintiff sought to use him as an expert, and for that purpose, after the witness had testified that the insulation was scorched on some of the wires, asked him, assuming that the insulation was worn off, what effect that would have upon the use and operation of the controller. This was objected to and excluded on the ground that the witness had not been put on as an expert. After some further questions and answers in regard to the principles and operation and results in certain cases of electric power, which were evidently put to bring out the knowledge of the witness in regard to such matters the witness was asked, " Now from your study of this case and from your familiarity with the principle of the resistance box did you form any opinion as to when that was burned out, or blown out? " And again, " Did you form an opinion as to what was the cause of the burning of the panel?" Upon objection both questions were excluded, the presiding judge stating in substance, later, that anything in the nature of facts could be shown by the witness, but anything in the nature of an opinion was excluded.

It is no doubt true, as contended by the plaintiff, that while the general rule is that the question whether a witness is quali-

fied as an expert is for the trial court, nevertheless, when the facts upon which the decision of the question depends are undisputed, the question becomes one of law, and the decision of the trial court may be reviewed. *Muskeget Island Club* v. *Nantucket*, 185 Mass. 303. It is also no doubt true that the fact that a witness is not offered as an expert by the party calling him will not prevent the other side from using him as such if it turns out that he has the necessary qualifications. In the present case, while the witness showed great practical familiarity with the equipment and operation of electric cars, and might well have been allowed to express his opinion, we do not think that the facts in regard to his qualifications were so clear and undisputed that it can be said as matter of law that the presiding judge was wrong in excluding the questions which it did.

We do not understand that any ruling was asked for or any exception saved in regard to the witness's testimony at the former trial.

*Exceptions overruled.*