## FRANCES S. H. MASSALETTI *vs.* MARY FITZROY.

Middlesex. December 7, 1916. — October 29, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence*, Degrees of, Toward one transported gratuitously. *Motor Vehicle*, Duty of owner to one transported gratuitously.

One who is travelling *gratis* in a motor car in company with its owner by such owner's invitation and is injured by reason of the negligence of the chauffeur operating the car, who is acting at the time as the servant of the owner, cannot maintain an action against such owner for his injuries unless he can show gross negligence on the part of the chauffeur. *West* v. *Poor*, 196 Mass. 183, approved.

Discussion by LORING, J., of degrees of negligence.

Ground of decision in *Davis* v. *Central Congregational Society*, 129 Mass. 367, discussed by LORING, J.

The measure of liability of one who undertakes to carry a person *gratis* is the same as that of one who undertakes to keep goods *gratis*. By LORING, J.

The rule stated in *Gill* v. *Middleton*, 105 Mass. 477, 480, that "The law furnishes no definition of gross negligence as distinguished from want of reasonable and ordinary care, which can be of any practical utility," is repudiated and overruled.

Justice requires that to make out liability in case of a gratuitous undertaking the plaintiff must prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing. By LORING, J.

TORT for personal injuries sustained on January 19, 1911, when the plaintiff by invitation of the defendant was travelling with the defendant in a motor car owned by the defendant and operated by one Smith, alleged to be a servant of the defendant, on Commonwealth Avenue in Newton, by reason of the alleged negligence of the defendant's servant, who drove the car against a post at the side of the highway, overturning the car and pinning the plaintiff under it. Writ dated February 9, 1912.

In the Superior Court the case was tried before *Dana,* J. The facts which could have been found upon the evidence are stated in the opinion. At the close of the evidence the judge under St. 1913, c. 716, § 2, submitted to the jury three questions, which with the answers of the jury were as follows:

"1. Was the accident caused by the negligence of the chauffeur, Smith?" The jury answered, "Yes."

"2. Was Smith the servant of the defendant and acting as such within the scope of his authority at the time of the accident?" The jury answered, "Yes."

"3. What are the damages to which the plaintiff is entitled?" The jury answered, "$1,225."

Thereupon the judge ordered a verdict for the defendant and reported the case for determination by this court, with the stipulation that, if the ordering of the verdict for the defendant was right, final judgment for the defendant was to be entered upon this verdict. If it was wrong, such disposition, including final judgment for the plaintiff for $1,225, was to be made of the case as justice might require.

The report stated that at the trial the plaintiff did not contend that the jury could find from the evidence gross negligence on the part of the defendant.

*E. C. Stone,* for the plaintiff.

*J. M. Hoy,* (*C. M. Gordon* with him,) for the defendant.

LORING, J. While staying with the defendant as her guest the plaintiff at the defendant's invitation went out with the

defendant in her motor car. The car was driven by a chauffeur furnished by the owner of the garage where it was kept. Through the negligence of the chauffeur the machine was overturned and fell on the plaintiff, causing the injuries here complained of. The jury found that while driving the machine the chauffeur acted as the defendant's servant, and this finding was warranted by the evidence. They also found that the accident was caused by the negligence of the chauffeur. Upon the jury making these findings the judge directed the jury to return a verdict for the defendant and reported the case to this court.

"At the trial the plaintiff did not claim that the jury could find from the evidence gross negligence on the part of the defendant." There was no question of negligence on the part of any one but the defendant's chauffeur and the plaintiff has not contended that there was. We therefore construe her concession to be a concession that she did not make out a case of gross negligence on the part of the chauffeur.

It was decided in *West* v. *Poor*, 196 Mass. 183, that a defendant who invites a plaintiff to ride *gratis* in his carriage is liable to the same extent that a gratuitous bailee is liable. In *West* v. *Poor* a milkman on returning to his wagon after delivering some milk found in it the plaintiff and some other children. He did not order them out of the wagon but drove on. When the defendant stopped to make the next delivery the plaintiff with the defendant's assistance undertook to get out of the wagon, and while she was in the act of getting out the horse started, the plaintiff was thrown to the ground and suffered the injuries complained of in that action. That case was disposed of by this court in these words: "He [the defendant] did nothing and said nothing to invite them, and the nearest analogy that occurs to us is that of a self invited guest in whose presence the host acquiesces and whose enjoyment he seeks to promote, or that of a gratuitous bailee. In the former case the degree of care required is that of licensor and licensee, (*Plummer* v. *Dill*, 156 Mass. 426, *Hart* v. *Cole*, 156 Mass. 475,) which, as has often been said, requires only that the licensor shall not set traps for the licensee and shall refrain from reckless, wilful or wanton misconduct tending to injure him. *Massell* v. *Boston Elevated Railway*, 191 Mass. 491. In the latter case, in order to render the bailee liable, it must appear that he has been guilty

of culpable negligence. *Whitney* v. *Lee,* 8 Met. 91. *Nolton* v. *Western Railroad,* 15 N. Y. 444." The liability "of a gratuitous bailee" was described by Chief Justice Shaw in the case of *Whitney* v. *Lee,* cited above in these words: "Subject to these remarks upon the application of these distinctions [as to different degrees of negligence], we think it well settled, that a bailee for safe keeping, without reward, is not responsible for the article deposited, without proof that the loss was occasioned by bad faith, or gross negligence. This rule was settled, on great consideration, and after full deliberation, in *Foster* v. *Essex Bank,* 17 Mass. 479; and this supersedes the necessity of any full review of the authorities."

The plaintiff in effect asks us to overrule *West* v. *Poor* so far as the second ground goes on which that case was decided. In that connection she has relied upon *Patnode* v. *Foote,* 153 App. Div. (N. Y.) 494, *Pigeon* v. *Lane,* 80 Conn. 237, and *Beard* v. *Klusmeier,* 158 Ky. 153. In addition to these cases relied upon by the plaintiff, there are cases to the same effect not cited by her which ought to be considered in connection with them. We take them up in their order. The first of these cases in point of time is *Mayberry* v. *Sivey,* 18 Kans. 291. That case was decided on the authority of this statement of Wharton in his text-book on negligence: "A person who undertakes to do service for another is liable to such other person for want of due care and attention in the performance of the service, even though there is no consideration for such undertaking. The confidence accepted is an adequate consideration to support the duty." But Mr. Wharton is of opinion that in the common law of England there are no degrees of negligence. This conclusion is based on Mr. Wharton's contention that the opinion of Chief Justice Holt in *Coggs* v. *Bernard,* 2 Ld. Raym. 909, so far as it made a distinction between gross and ordinary negligence was based on a misapprehension as to the rule of the civil law. See Whart. on Negl. (2d ed.) §§ 482–510. Whether different degrees of negligence are known to the common law is a question to be considered by itself and taken up later on. The next case in point of time and the most important of all these cases is *Pigeon* v. *Lane,* 80 Conn. 237. In that case the defendants had sent a sleigh in charge of their servant, Rinski by name, to bring their employees to their work and there was evidence that the plaintiff was injured by Rinski's negligence. The pre-

siding judge instructed the jury that it was immaterial whether the defendants were bound to send the sleigh to bring the plaintiff to his work or had sent the sleigh gratuitously; that in either case Rinski was the fellow servant of the plaintiff and the defendants were not liable. The Supreme Court of Errors of Connecticut decided that if the defendants sent Rinski gratuitously he was not the plaintiff's fellow servant and for that reason the appeal was well taken. After that point had been decided this was added (at page 241): "Although, if the plaintiff was injured while riding upon the sleigh as a mere licensee, the defendants could be held liable only for their active negligence in causing the injury — which would include their own or their servant Rinski's negligent acts by which the danger of riding upon the conveyance was increased, or a new danger created, while the plaintiff was riding under such license (*Pomponio* v. *New York, New Haven, & Hartford Railroad*, 66 Conn. 528, 538), — the allegation that the injury was caused by the careless, negligent and improper driving of the conveyance by the defendants' servant, in such a manner that it collided with the bridge, is a sufficient averment to permit proof of that negligence which would render the defendants liable as licensors." *Pomponio* v. *New York, New Haven, & Hartford Railroad*, 66 Conn. 528 (on the authority of which this statement in *Pigeon* v. *Lane* is founded) was a case where on the findings made the plaintiff was crossing the defendant's track for his own convenience at a place planked as a crossing but where neither the plaintiff nor the public had a right to cross, and was injured by the negligence of the defendant in the operation of one of its trains. It was held that while the plaintiff, being on the defendant's premises for his own convenience, was a licensee and therefore took the defendant's premises as he found them (in the absence of a trap), the defendant was liable for injuries suffered by the plaintiff by reason of active negligence in the operation of its trains. *Pomponio* v. *New York, New Haven, & Hartford Railroad* was decided on the authority of *Corrigan* v. *Union Sugar Refinery*, 98 Mass. 577. That was a case in which the plaintiff was proceeding as a licensee along an alleyway on the premises of the defendant and was injured by the negligence of the defendant's servants in throwing down beer barrels into the alleyway. In *Pomponio* v. *New York, New Haven, & Hartford Railroad*, *ubi*

*supra,* the court quotes a reference of this court in *Stevens* v. *Nichols,* 155 Mass. 472, 475, to the doctrine of *Corrigan* v. *Union Sugar Refinery,* which was in these words: "The licensor has, however, no right to create a new danger while the license continues. *Oliver* v. *Worcester,* 102 Mass. 489, 502. *Corrigan* v. *Union Sugar Refinery,* 98 Mass. 577. *Corby* v. *Hill,* 4 C. B. (N. S.) 556. So a railroad company which allows the public habitually to use a private crossing of its tracks cannot use active force against a person or vehicle crossing under a license, express or implied." It is not necessary to consider whether this reference in *Stevens* v. *Nichols* to the doctrine of *Corrigan* v. *Union Sugar Refinery* is or is not a sufficiently careful statement of that doctrine to determine the reason on which it is founded or the limitations to which it is subject. The rule of *Corrigan* v. *Union Sugar Refinery* is a rule as to the liability of a licensor to a licensee. But where a defendant invites a plaintiff to ride *gratis* in his carriage the question is not a question of the measure of liability of a licensor to a licensee. It is the question of the measure of the liability assumed in case of a gratuitous undertaking. For this reason the doctrine of *Pomponio* v. *New York, New Haven, & Hartford Railroad* and of *Corrigan* v. *Union Sugar Refinery* (the case on which *Pomponio* v. *New York, New Haven, & Hartford Railroad* was decided) is not applicable in the case at bar where the defendant invited the plaintiff to ride *gratis* in her carriage.

The next case in point of time is *Patnode* v. *Foote,* 153 App. Div. (N. Y.) 494. In that case it was said that no decision upon the point had been found in New York but that the case of *Pigeon* v. *Lane* in Connecticut "impresses us as stating the true rule." Without further discussion the court followed the opinion in *Pigeon* v. *Lane.* The next case, *Adams* v. *Tozer,* 163 App. Div. (N. Y.) 751, was decided on the authority of *Patnode* v. *Foote* and of *Grimshaw* v. *Lake Shore & Michigan Southern Railway,* 205 N. Y. 371. The latter was a case where the plaintiff, being by license of the Wabash Railroad Company on an engine of that company, was injured in a collision at a grade crossing of the rails of the Wabash and of the defendant railroad company caused by the negligence of those operating the defendant's engine. It was held that the defendant owed the plaintiff the duty of exercising due care not to injure him since he was lawfully on the Wabash

engine and that it was immaterial that he was lawfully there by license and not by compensation paid by him to the Wabash Railroad Company. In other words the point decided in *Grimshaw* v. *Lake Shore & Michigan Southern Railway, ubi supra,* is that decided in *Boutlier* v. *Malden,* 226 Mass. 479. It has no bearing upon the liability of a defendant who invites a plaintiff to ride *gratis* in his carriage. There is another case in New York (referred to in one of the cases to be considered later on) namely, *Birch* v. *New York,* 190 N. Y. 397. The point decided in that case was that a licensee entering on the wharf of a licensor takes the property as he finds it. In making that decision the court said *obiter* that the owner of land is liable to one entering upon it as licensee for active negligence on its part; that is to say, it was liable in a case like *Corrigan* v. *Union Sugar Refinery.* The next case in point of time is *Lochhead* v. *Jensen,* 42 Utah, 99. In that case a verdict was set aside on the ground that the plaintiff was allowed at the trial to recover for an injury not alleged in the complaint. After setting aside the verdict on that ground the court (at page 104) said with respect to a new trial: that there was nothing in the defendant's contention "that 'the ride in the automobile was the mutual enjoyment of all three' occupants, and since the plaintiff did not show that the deceased protested against the manner of its operation it must be presumed that he acquiesced therein; and therefore the negligence, if any, of the defendant must be imputed to the deceased." There was nothing else in the case which bears or might be thought to bear upon the question which we have under consideration. The next case in point of time is *Beard* v. *Klusmeier,* 158 Ky. 153. That case was decided without discussion on the authority of *Lochhead* v. *Jensen* and *Patnode* v. *Foote.* The next is *Fitzjarrell* v. *Boyd,* 123 Md. 497. That case was decided on the authority of Huddy on Automobiles, § 113; *Patnode* v. *Foote, Beard* v. *Klusmeier, Pigeon* v. *Lane, Birch* v. *New York, Mayberry* v. *Sivey* and *Lochhead* v. *Jensen.* After citing these authorities the court said at page 506: "The rule announced in these cases, we think, is the true and correct rule, and is controlling on this appeal." There was no further discussion of the principles involved or of other decisions.

It is apparent from this review of the decisions in conflict with *West* v. *Poor* that the question whether they are or are not correct

depends upon the question whether degrees of negligence are known to the common law and whether the rule of *Corrigan* v. *Union Sugar Refinery* governs the liability of a defendant who invites a plaintiff to ride *gratis* in his carriage.  Apart from the question whether degrees in negligence are a thing known to the common law (which was in reality what was decided in the negative in *Mayberry* v. *Sivey*, 18 Kans. 291) we are of opinion that these cases are not well decided and that they should not be followed.

Mr. Wharton is not alone in the conclusion reached by him that no such a thing as different degrees in negligence is known to the common law.  It was said by Lord Cranworth (then Baron Rolfe) in *Wilson* v. *Brett*, 11 M. & W. 113, 115, 116, that: "I said I could see no difference between negligence and gross negligence — that it was the same thing, with the addition of a vituperative epithet." In *Beal* v. *The South Devon Railway*, 3 H. & C. 337, 341, Crompton, J., in delivering the judgment of the Exchequer Chamber said that it was a mistake to say that there was no difference between ordinary and gross negligence "because a strict line of demarcation cannot be drawn between them."   And in *Grill* v. *General Iron Screw Colliery Co.* L. R. 1 C. P. 600, both Willes, J., and Montague Smith, J., expressed their dissatisfaction with the term gross negligence.  Willes, J., went so far as to say, at page 612: "No information, however, has been given us as to the meaning to be attached to gross negligence in this case; and I quite agree with the dictum of Lord Cranworth in *Wilson* v. *Brett* that gross negligence is ordinary negligence with a vituperative epithet, — a view held by the Exchequer Chamber: *Beal* v. *South Devon Railway Co.* [3 H. & C. 337].  Confusion has arisen from regarding negligence as a positive instead of a negative word." But it is probable that an end was put in England to these objections to the term gross negligence by the decision of the Privy Council in *Giblin* v. *McMullen*, L. R. 2 P. C. 317, the judgments of which, while not binding on the High Court, are "entitled to very great weight indeed."  *Dulieu* v. *White*, [1901] 2 K. B. 669, at page 677.  That was a case in its dramatic as well as in its legal aspects like *Foster* v. *Essex Bank*, 17 Mass. 479, and it was largely upon the authority of the decision in *Foster* v. *Essex Bank* that *Giblin* v. *McMullen* was decided.  In delivering the judgment

of the Privy Council in *Giblin* v. *McMullen,* Lord Chelmsford said at pages 336, 337: "From the time of Lord Holt's celebrated judgment in *Coggs* v. *Bernard,* in which he classified and distinguished the different degrees of negligence for which the different kinds of bailees are answerable, the negligence which must be established against a gratuitous bailee has been called 'gross negligence.'" After referring to Lord Cranworth's observation in *Wilson* v. *Brett* and to the fact that "this critical observation has been since approved of by other eminent judges," he said: "Of course, if intended as a definition, the expression 'gross negligence' wholly fails of its object. But as there is a practical difference between the degrees of negligence for which different classes of bailees are responsible, the term may be usefully retained as descriptive of that difference. . . . No advantage would be gained by substituting a positive for a negative phrase, because the degree of care and diligence which a bailee must exercise corresponds with the degree of negligence for which he is responsible, and there would be the same difficulty in defining the extent of the positive duty in each case as the degree of neglect of it which incurs responsibility. In truth, this difficulty is inherent in the nature of the subject, and though degrees of care are not definable, they are with some approach to certainty distinguishable." *Giblin* v. *McMullen, ubi supra,* established the rule laid down by Chief Justice Holt in *Coggs* v. *Bernard,* 2 Ld. Raym. 909, 913, that to charge a defendant in case of gratuitous bailment the plaintiff must prove gross negligence, and that rule has been applied in the only cases of gratuitous undertakings which have arisen in England since then. In *Moffatt* v. *Bateman,* L. R. 3 P. C. 115, the question to be decided in the case at bar was before the court. It was held by the Privy Council that, in case of an invitation to ride *gratis* in the defendant's carriage, to make out liability the plaintiff had to prove gross negligence. And in *Coughlin* v. *Gillison,* [1899] 1 Q. B. 145, it was decided that, in the case of a gratuitous lending of an engine for the sole benefit of the borrower, the borrower to make out liability had to prove a gross neglect on the part of the lender. In all three of these cases the decision was that the plaintiff took nothing because he had failed to make out gross negligence.

In *Philadelphia & Reading Railroad* v. *Derby,* 14 How. 468, 485,

486, Grier, J., said: "It is true a distinction has been taken, in some cases, between simple negligence, and great or gross negligence; and it is said, that one who acts gratuitously is liable only for the latter. But this case does not call upon us to define the difference, (if it be capable of definition,) as the verdict has found this to be a case of gross negligence. When carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance or the negligence of careless agents. Any negligence, in such cases, may well deserve the epithet of 'gross.'" In *Steamboat New World* v. *King,* 16 How. 469, 474, Curtis, J. (after pointing out that the appellee was lawfully upon the steamboat of the plaintiff) said that it was not necessary to decide whether "precisely the same obligations in all respects" attached in that case as in case of an ordinary passenger paying fare. He then referred to the statement of Grier, J., in *Philadelphia & Reading Railroad* v. *Derby,* 14 How. 468, which we have just quoted, and he added: "We desire to be understood to reaffirm that doctrine." In addition he said: "The theory that there are three degrees of negligence, described by the terms slight, ordinary, and gross, has been introduced into the common law from some of the commentators on the Roman law. It may be doubted if these terms can be usefully applied in practice;" he then refers among other cases to *Wilson* v. *Brett,* 11 M. & W. 113, and adds: "Some of the ablest commentators on the Roman law, and on the civil code of France, have wholly repudiated this theory of three degrees of diligence." See also in this connection *Milwaukee & St. Paul Railway* v. *Arms,* 91 U. S. 489, 493–495; *Indianapolis & St. Louis Railroad* v. *Horst,* 93 U. S. 291, 295, 296; *Northern Pacific Railway* v. *Adams,* 192 U. S. 440. But in the case of *Railroad Co.* v. *Lockwood,* 17 Wall. 357, 382, 383, Bradley, J., said: "We have already adverted to the tendency of judicial opinion adverse to the distinction between gross and ordinary negligence. Strictly speaking, these expressions are indicative rather of the degree of care and diligence which is due from a party and which he fails to perform, than of the amount of inattention, carelessness, or stupidity which he exhibits. If very

little care is due from him, and he fails to bestow that little, it is called gross negligence. If very great care is due, and he fails to come up to the mark required, it is called slight negligence. And if ordinary care is due, such as a prudent man would exercise in his own affairs, failure to bestow that amount of care is called ordinary negligence. In each case, the negligence, whatever epithet we give it, is failure to bestow the care and skill which the situation demands; and hence it is more strictly accurate perhaps to call it simply 'negligence.' And this seems to be the tendency of modern authorities. If they mean more than this, and seek to abolish the distinction of degrees of care, skill, and diligence required in the performance of various duties and the fulfilment of various contracts, we think they go too far; since the requirement of different degrees of care in different situations is too firmly settled and fixed in the law to be ignored or changed. The compilers of the French Civil Code undertook to abolish these distinctions by enacting that 'every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it.' Toullier, in his commentary on the code, regards this as a happy thought, and a return to the law of nature. But such an iron rule is too regardless of the foundation principles of human duty, and must often operate with great severity and injustice."

The last word of importance upon this point to be found in the decisions of the Supreme Court of the United States is in *Preston* v. *Prather*, 137 U. S. 604. In that case the rule in *Foster* v. *Essex Bank*, 17 Mass. 479, was repudiated. In that case Field, J., said (pages 608, 609): "No one taking upon himself a duty for another without consideration is bound, either in law or morals, to do more than a man of that character would do generally for himself under like conditions. The exercise of reasonable care is in all such cases the dictate of good faith. . . . But what will constitute such reasonable care will vary with the nature, value and situation of the property, the general protection afforded by the police of the community against violence and crime, and the bearing of surrounding circumstances upon its security. . . . The general doctrine, as stated by text writers and in judicial decisions, is that gratuitous bailees of another's property are not responsible for its loss unless guilty of gross negligence in its keeping. But gross negligence in such cases

is nothing more than a failure to bestow the care which the property in its situation demands; the omission of the reasonable care required is the negligence which creates the liability; and whether this existed is a question of fact for the jury to determine, or by the court where a jury is waived. See *Steamboat New World* v. *King,* 16 How. 469, 474, 475; *Railroad Co.* v. *Lockwood,* 17 Wall. 357, 383; *Milwaukee & St. Paul Railway* v. *Arms,* 91 U. S. 489, 494."

In this Commonwealth the judges seem to have had little if any difficulty in recognizing degrees of negligence in case of gratuitous bailments but to have had Lord Cranworth's difficulty (or rather the difficulty which those who followed Lord Cranworth put in articulate form) in other cases. The remarks to which we referred but did not set forth when we quoted the opinion of Chief Justice Shaw in *Whitney* v. *Lee,* 8 Met. 91, 93, were these: "The law has endeavored to make a distinction in the degrees of care and diligence to which different bailees are bound; distinguishing between gross negligence, ordinary negligence, and slight negligence; though it is often difficult to mark the line where the one ends and the other begins. And it must be often left to the jury, upon the nature of the subject matter, and the particular circumstances of each case, with suitable remarks by the judge, to say whether the particular case is within the one or the other." In the later case of *Chandler* v. *Worcester Mutual Fire Ins. Co.* 3 Cush. 328, Chief Justice Shaw was more pronounced in his views as to degrees of negligence. That was a case in which the defendant set up in defence to a claim on a fire insurance policy the fact that the fire had taken place through the gross neglect of the insured. After deciding that to make out the defence relied upon the insurance company had to "show a culpable recklessness and indifference to the rights of others," Chief Justice Shaw added at page 331: "The terms 'slight negligence,' 'want of ordinary care,' and 'gross negligence,' are useful in their way, but they are not precise and exact enough, without a statement of the facts designated by them, to enable a court to judge of the rights of the parties thereby affected. The proper business of jurisprudence seems to be, to take a series of facts and circumstances, conceded or proved, and to declare what are the rights of the parties arising out of them." In *Smith* v. *First National Bank,* 99 Mass. 605, (a case of gratuitous bailment,) Wells, J., ends the opinion at page 612

in these words: "But the court are of opinion that the whole testimony did not furnish such evidence as would warrant a jury in finding that there was gross negligence on the part of the bank; and that the loss of the bonds resulted from such negligence. *Giblin* v. *McMullen,* L. R. 2 P. C. 317. The exceptions must therefore be sustained upon that ground." *Gill* v. *Middleton,* 105 Mass. 477, was a case in which the defendant (the owner of the premises in question then leased to the plaintiff's husband) had undertaken to repair them *gratis.* The presiding judge told the jury that the defendant was liable if the premises were "not put in safe repair, by reason of the want of ordinary skill or care in the workmanship or selection of materials on the part of the defendant." The defendant contended in support of an exception taken to this part of the charge "that upon a gratuitous undertaking of this nature the defendant could only be held responsible for bad faith or for gross negligence." His contention was not sustained and his exceptions were overruled. Ames, J., in delivering the opinion of the court said at pages 479, 480: "It appears to us that this is one of the cases in which there is no practical difference between gross negligence and the want of ordinary care and skill; and that the omission of what Baron Rolfe calls a mere vituperative epithet is not a valid objection to the judge's charge. The true question for the jury was, whether the defendant had discharged the duty which he had assumed, with that due regard to the rights of the other party which might reasonably have been expected of him under all the circumstances." After referring to the case of *Steamboat New World* v. *King,* 16 How. 469, he added, "The law furnishes no definition of gross negligence as distinguished from want of reasonable and ordinary care, which can be of any practical utility. The question of reasonable care must always depend on the special circumstances of each case, and is almost of necessity a question of fact rather than of law. The degrees of negligence, so often spoken of in text books, do not admit of such precision and exactness of definition as to be of any practical advantage in the administration of justice, without a detail of the facts which they are intended to designate. *Steamboat New World* v. *King,* 16 How. 469. *Chandler* v. *Worcester Mutual Fire Ins. Co.* 3 Cush. 328. *Wilson* v. *Brett,* 11 M. & W. 113. *Grill* v. *General Iron Screw Colliery Co.* L. R. 1 C. P. 600." The same learned judge in delivering the opinion of this

court in the later case of *Jenkins* v. *Bacon,* 111 Mass. 373 (a case of gratuitous bailment), said at page 376: "According to the well settled rule, the bailee who acts without compensation can only be held responsible for bad faith, or gross negligence, if the deposit should be lost or injured while in his custody. *Whitney* v. *Lee,* 8 Met. 91. *Foster* v. *Essex Bank,* 17 Mass. 479." In *Smith* v. *Postal Telegraph Cable Co.* 174 Mass. 576, at page 578, Holmes, C. J., said: "If the rule is to be adhered to that there can be no recovery for sickness due to the purely internal operation of fright caused by a negligent act, it cannot be avoided by calling the negligence gross and alleging that the defendant ought to have known that the result complained of would follow his act. Negligence with reference to a given consequence means that the consequence ought to have been foreseen, and although the distinction between gross negligence and negligence is known to the law, still, having regard to the grounds for the above-mentioned rule, to allow it to be avoided by such an allegation would be to do away with it."

Apart from the opinions expressed in these common law cases, the question whether in the administration of justice it is possible or practicable to draw a distinction between ordinary and gross negligence has been put to rest in this Commonwealth by decisions under statutes which have made a distinction between the two. It was provided as early as 1840 (St. 1840, c. 80) and has been continued in a number of statutes enacted since then (for a collection of these statutes see *Hudson* v. *Lynn & Boston Railroad,* 185 Mass. 510; *Brooks* v. *Fitchburg & Leominster Street Railway,* 200 Mass. 8) that various persons and corporations should be liable to a penalty if the death of a person was caused through the gross negligence of their servants.* And by St. 1871, c. 352, now R. L. c. 111, § 268, it was provided that a railroad corporation should be liable for an accident at a grade crossing where the statutory signals have not been given unless "the person injured or the person who had charge of his person or property was, at the time of the collision, guilty of gross or wilful negligence . . . and that such gross or wilful negligence . . . contributed to the injury." Both sets of statutes made a distinction between gross and ordinary negligence. Although judges of this court have had the

* The word "gross" was stricken out of the present statute in the case of railroads and street railways by St. 1907, c. 392.

same difficulty in determining the meaning of gross negligence under these statutes that they had as to the meaning of that term at common law (see Knowlton, J., in *Phelps* v. *New England Railroad,* 172 Mass. 98, 100, and Hammond, J., in *Evensen* v. *Lexington & Boston Street Railway,* 187 Mass. 77, 79), yet it is settled that the term gross negligence in these statutes means a materially greater want of care than in case of ordinary negligence. The distinction between the two has been recognized in numberless cases, but the meaning of gross negligence as distinguished from a want of ordinary care has been defined (in the way stated above) in the following cases under the death statutes: *Galbraith* v. *West End Street Railway,* 165 Mass. 572; *Morey* v. *Gloucester Street Railway,* 171 Mass. 165; *Phelps* v. *New England Railroad,* 172 Mass. 98; *Evensen* v. *Lexington & Boston Street Railway,* 187 Mass. 77; *Brennan* v. *Standard Oil Co. of New York,* 187 Mass. 376; *Dolphin* v. *Worcester Consolidated Street Railway,* 189 Mass. 270; *Spooner* v. *Old Colony Street Railway,* 190 Mass. 132; *Pearlstein* v. *New York, New Haven, & Hartford Railroad,* 192 Mass. 20; *Manning* v. *Conway,* 192 Mass. 122; *Lanci* v. *Boston Elevated Railway,* 197 Mass. 32; *Dimauro* v. *Linwood Street Railway,* 200 Mass. 147; *Devine* v. *New York, New Haven, & Hartford Railroad,* 205 Mass. 416; *Renaud* v. *New York, New Haven, & Hartford Railroad,* 206 Mass. 557; *Adams* v. *Boston Elevated Railway,* 214 Mass. 1. And it has been defined in the same way in three cases arising under the statutes as to the failure to give signals at grade crossings in R. L. c. 111, § 268; *Copley* v. *New Haven & Northampton Co.* 136 Mass. 6; *Debbins* v. *Old Colony Railroad,* 154 Mass. 402; *Emery* v. *Boston & Maine Railroad,* 173 Mass. 136. In further explanation of the meaning of gross negligence under these statutes it is settled that it is something less than the wilful, wanton and reckless conduct which makes a defendant liable to a trespasser. *Banks* v. *Braman,* 188 Mass. 367. Note to *Fitzmaurice* v. *New York, New Haven, & Hartford Railroad,* 192 Mass. 159, 162. *Lanci* v. *Boston Elevated Railway,* 197 Mass. 32.

Whether Mr. Wharton and the commentators referred to by Mr. Justice Curtis in *Steamboat New World* v. *King, ubi supra,* are right or wrong as to the existence of degrees of negligence in the civil law, it is plain that in this Commonwealth that distinction exists. And it is not necessary in deciding that question

to go outside of the law which is administered here. The distinction was first put forward in England in 1703 in *Coggs* v. *Bernard,* 2 Ld. Raym. 909. It was adopted in this Commonwealth in *Foster* v. *Essex Bank,* 17 Mass. 479, in 1821, and the rule adopted in that case was (in the words of Chief Justice Shaw in *Whitney* v. *Lee,* 8 Met. 91) "settled, on great consideration, and after full deliberation . . . and this supersedes the necessity of any full review of the authorities." The decision in *Foster* v. *Essex Bank* (involving the distinction between gross and ordinary negligence) was affirmed by this court in *Whitney* v. *Lee, supra; Smith* v. *First National Bank,* 99 Mass. 605, and *Jenkins* v. *Bacon,* 111 Mass. 373. And (in spite of *Preston* v. *Prather,* 137 U. S. 604) that is the rule adopted generally in other jurisdictions. *Giblin* v. *McMullen,* L. R. 2 P. C. 317. *Hibernia Building Association* v. *McGrath,* 154 Penn. St. 296. *Storer* v. *Gowan,* 18 Maine, 174. *Michigan Central Railroad* v. *Carrow,* 73 Ill. 348. *Illinois Central Railroad* v. *Tronstine & Co.* 64 Miss. 834. The doubt as to the existence of the distinction raised by the opinion of Ames, J., in *Gill* v. *Middleton,* 105 Mass. 477, must be taken (even without regard to the subsequent opinion of the same learned judge in *Jenkins* v. *Bacon*) to have been a doubt which on a review of all the common law authorities no longer exists in this Commonwealth. In addition that doubt has been put at rest so far as this Commonwealth is concerned by the decisions of this court under statutes which made the distinction between gross and ordinary negligence. No one familiar with the jurisprudence of Massachusetts could question to-day the existence in this Commonwealth of the distinction between gross and ordinary negligence.

In spite of the decisions in *Giblin* v. *McMullen,* L. R. 2 P. C. 317, *Moffatt* v. *Bateman,* L. R. 3 P. C. 115, and *Coughlin* v. *Gillison,* [1899] 1 Q. B. 145, a doubt arises as to the measure of liability in England in a case where a person enters upon a gratuitous undertaking. That doubt arises from the terms used by Chief Justice Holt in stating the liability of a bailee in case of the sixth sort of bailment discussed by him in his opinion in *Coggs* v. *Bernard,* 2 Ld. Raym. 909, 913, and those used by Collins, M. R., in delivering the judgment of the Court of Appeal in *Harris* v. *Perry & Co.* [1903] 2 K. B. 219, 226. In delivering judgment in *Coggs* v. *Bernard,* Lord Holt first laid it down (see page 913) that,

in case of a gratuitous bailment of goods for the sole benefit of the bailee, the bailee "is not answerable, if they are stole without any fault in him, neither will a common neglect make him chargeable, but he must be guilty of some gross neglect." This was the first sort of bailment considered by Chief Justice Holt in *Coggs* v. *Bernard.* When the Chief Justice came to the sixth sort of bailment considered by him in that judgment, namely, an undertaking to transport goods where the bailee was to have no reward for his pains he said (at pages 918, 919): "Then the bailee having undertaken to manage the goods, and having managed them ill, and so by his neglect a damage has happened to the bailor, which is the case in question, what will you call this? In Bracton, lib. 3, 100, it is called *mandatum.* . . . It is what we call in English acting by commission. And if a man acts by commission for another *gratis,* and in the executing his commission behaves himself negligently, he is answerable. . . . This undertaking obliges the undertaker to a diligent management." *Harris* v. *Perry & Co., ubi supra,* was a case in which an inspector of work being done in the construction of an underground railway at the time of the accident was riding *gratis* for his own convenience at the invitation of one of the defendant's officers on the engine of a construction train in place of using a plank walk constructed by the defendant to enable inspectors to oversee the work. While so riding he was injured by the negligence of the defendant's agents. In·delivering the judgment of the Court of Appeal in that case, Collins, M. R., after stating that there was evidence of a trap and so liability even if the plaintiff was a licensee, said: "At all events, I think it was competent for the jury to find, as they must be taken to have found, a failure of that ordinary care which is due from a person who undertakes the carriage of another gratuitously. . . . There is an obvious difference between the measure of confidence reposed and responsibility accepted in the case of a person who merely received permission to traverse the premises of another, and in the case where a person or his property is received into the custody of another for transportation: see in the case of goods, *Southcote's Case,* cited in *Coggs* v. *Bernard,* and the notes thereto." It would appear on the first reading of these two judgments that both the learned judges intended to make a distinction between the care which has to be exercised in case of a gratuitous bailment

and that which has to be exercised in case of a gratuitous under-taking of transportation. But upon a full consideration of the matter it cannot be taken that either of them intended to make that distinction.

*Coggs* v. *Bernard* was before the court on a motion in arrest of judgment after a verdict for the plaintiff. The motion in arrest of judgment was based on the ground and solely on the ground that it was not alleged in the declaration that the defendant was to be paid for his pains. All that was before the court was the proposition that a defendant could be liable in case of a gratuitous transportation. No question was raised as to the measure of the defendant's liability in a case of a gratuitous transportation if there was liability in such a case. The Chief Justice disposed of the contention that a gratuitous undertaking to transport was a *nudum pactum* by pointing out the distinction between the case where a defendant fails to enter upon a gratuitous undertaking and the case where having entered upon it he is negligent in carry-ing it out. The fact that in stating that there was liability in a case where the defendant had entered upon a gratuitous under-taking Chief Justice Holt was not careful to state with accuracy the measure of that liability cannot be taken to be decisive. That question was not up for decision at that time.

The same is true of that part of the judgment of Collins, M. R., in *Harris* v. *Perry & Co.* quoted above. The contention in *Harris* v. *Perry & Co.* to which Collins, M. R., was addressing himself was that the plaintiff in that case was a licensee and that since he was a licensee he could not recover at all. In addressing himself to that contention Collins, M. R., said (first) there was evidence of a trap, and (secondly) that apart from that there was evidence on which the jury could find that there was a failure of care on the part of the defendant. To be sure he spoke of a lack of ordinary care in place of gross negligence. When one takes into account the fact that gross negligence is a term with which the English judges have quarrelled continually, it is perhaps natural that Col-lins, M. R., did not go out of his way to speak of gross negligence and did speak of "ordinary care." Moreover it is to be noticed that what Collins, M. R., said was: "a failure of that ordinary care which is due from a person who undertakes the carriage of another gratuitously."

But upon the question of the true interpretation of these two judgments there is more to be said. In his note to *Coggs* v. *Bernard*, Mr. Smith has this to say at pages 98, 103, 104, 1 Smith's Lead. Cas. (1st.Eng. ed.): "6. *Mandatum*. . . . The sixth and last class of bailments is (according to Lord *Holt*) *mandatum*, or a delivery of goods to somebody who is to carry them, or do something about them, *gratis*. And this might have been classed under the same head with *depositum*. For as the *keeping, carrying*, and *working upon* goods *for hire* are all included, both by Lord *Holt* and Sir *W. Jones*, under the same head, there seems no good reason why the *keeping, carrying*, and *working upon* them *gratuitously* should not have been so likewise. Certain it is, that the liabilities of the *depositary* and of the *mandatary* are precisely the same; both (in the absence, at least, of a contract in special terms) are bound to *slight diligence*, and to slight diligence only, and liable for nothing short of *gross negligence*, the reason in each case being the same, namely, that neither is to receive any reward for his services. Accordingly, whenever the extent of a mandatary's liability is discussed we find the cases respecting that of depositaries cited, and relied upon, and so *vice versa*. The cases of *Beauchamp* v. *Powley*, 1 M. & Rob. 38, *Shiells* v. *Blackburne*, 1 H. Bl. 158, and *Dartnall* v. *Howard*, 4 B. & C. 345, the facts of which are respectively stated at the commencement of this note, were decisions on the responsibility of mandataries, and from those, as well as from the general principle, it appears that such bailees are liable for *gross negligence*, and for that only." It is to be observed in connection with Mr. Smith's statement ("accordingly, whenever the extent of a mandatary's liability is discussed we find the cases respecting that of depositaries cited and relied upon") that *Harris* v. *Perry & Co.*, a case of a gratuitous *mandatum*, was decided on the authority of *Southcote's Case*, 4 Co. Rep. 83 *b*, a case of a gratuitous *depositum*. And that is true of *West* v. *Poor*, 196 Mass. 183, also; that case (a case of a gratuitous *mandatum*) was decided on the authority of *Whitney* v. *Lee*, 8 Met. 91, which was the case of a gratuitous *depositum*. There is more to be said with respect to the proper interpretation of Lord Holt's judgment in *Coggs* v. *Bernard* concerning a distinction between a gratuitous bailment and an undertaking of gratuitous transportation. That is that the third and fourth editions of Smith's Leading Cases were edited by

Mr. (afterwards Mr. Justice) Keating and by Mr. (afterwards Mr. Justice) Willes and that the seventh, eighth and ninth editions of Smith's Leading Cases were edited (with Mr. Arbuthnot) by Lord (then Mr.) Collins, who, when Master of the Rolls delivered the judgment in *Harris* v. *Perry & Co.* The statement of Mr. Smith quoted above (that there is no distinction between the measure of the liability in case of a gratuitous bailment and that in a case of a gratuitous transportation) has been left untouched by these three learned editors of that learned work. The fact that this statement was left untouched by Lord Collins would seem to be decisive of the question now under consideration so far as Lord Collins's judgment in *Harris* v. *Perry & Co.* is concerned. There were some additions made in these editions to Mr. Smith's statement but these additions did not even modify much less change the statement of Mr. Smith which we have set forth above. These additions may be found at page 104 in the third English edition, page 184 in the fourth English edition, page 247 in the seventh English edition, page 261 in the eighth English edition, and page 397 in the ninth American edition which is a reprint (with additional notes) of the ninth English edition. A ruling at *nisi prius* upon the question now before us was recently made in *Karavias* v. *Gallinocos,* 143 L. T. 237. In that case the jury found that the defendant was not guilty of gross but was guilty of ordinary negligence. Mr. Justice Avory (who made the ruling) stated that the question "in the state of the authorities, [was] a fit question to be taken to the Court of Appeal," but, since judgment was entered for the plaintiff in *Harris* v. *Perry & Co., ubi supra,* on a finding that the defendant in that case was guilty of ordinary negligence, he felt bound to enter judgment for the plaintiff on the findings made in *Karavias* v. *Gallinocos.*

It would seem that in England the liability of a gratuitous bailee and the liability of one who undertakes a gratuitous transportation is the same. And to this one thing more must be added, namely: However much the English judges have quarrelled with the meaning of the words gross negligence, it is the fact that when pushed to a decision the judges of England have invariably held that to make out liability in case of a gratuitous undertaking (no matter what the nature of the gratuitous undertaking was) gross negligence has to be made out. *Giblin* v. *McMullen,* L. R. 2 P. C.

317, *Moffatt* v. *Bateman*, L. R. 3 P. C. 115, and *Coughlin* v. *Gillison*, [1899] 1 Q. B. 145.

In holding that, to charge a defendant with liability in case of a gratuitous undertaking to transport a person, the plaintiff must prove gross negligence because that is the measure of liability in case of the gratuitous undertaking to keep or carry goods, it is not to be understood that gross negligence in the two cases is the same thing. In all cases (no matter whether the case is one of ordinary or of gross negligence) the consequences likely to result is a fact to be taken into consideration in determining what ought to be done by the defendant to fulfil the measure of his liability. For example: It might be held that the omission to do a certain thing in the transportation of goods was not negligence and that by reason of the seriousness of the consequences likely to result the omission to do the same thing in case of the transportation of a person would be negligence; and so in case of gross in place of ordinary negligence. For this general principle see, for example, *Hartford* v. *New York, New Haven, & Hartford Railroad,* 184 Mass. 365; *Mullins* v. *New York, New Haven, & Hartford Railroad,* 201 Mass. 38; *Martin* v. *Boston & Northern Street Railway,* 205 Mass. 16.

This brings us to the consideration of *Davis* v. *Central Congregational Society,* 129 Mass. 367, a case upon which the plaintiff has placed great reliance. In that case it was decided that the defendant society was liable to the plaintiff, who had been invited to attend a conference held in the defendant society's church at which the plaintiff was not a delegate, for injuries suffered by the plaintiff through a dangerous condition in the path leading to the church upon the jury finding that the defendant was negligent in the matter. That case has usually been cited when the doctrine that a charity is not liable for torts under the decision in *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432, has been set up in defence. It has never been affirmed as a decision upon the duty owed by a defendant who invites a plaintiff to enter upon his (the defendant's) land solely for his (the plaintiff's) purposes unless it can be held to have been affirmed or approved on that point by what was said by Barker, J., in *Chapin* v. *Holyoke Young Men's Christian Association,* 165 Mass. 280, 281. Of the decision in *Davis* v. *Central Congregational Society* it is to be observed that it

was decided at a time when the distinction between a person going on the premises of the defendant for business to be transacted with the defendant and persons going upon those premises for business of their own (*Plummer* v. *Dill,* 156 Mass. 426, and *Hart* v. *Cole,* 156 Mass. 475) had not been established. Were the case to arise to-day it might be contended that since the plaintiff in *Davis* v. *Central Congregational Society* went on the defendant's premises for her own purposes she was in no better position than the plaintiffs in *Plummer* v. *Dill* and *Hart* v. *Cole.* It is hard to see a distinction between the rights of a plaintiff expressly invited to attend a church conference to which she was not a delegate and a plaintiff impliedly invited to attend a funeral or a wake. But however that may be the decision in *Davis* v. *Central Congregational Society* has no bearing on the question now before us. Whether one invited to come on to the defendant's premises for his (the invitee's) purposes alone takes them as he finds them or can hold the defendant for negligence in case the premises are in a dangerous condition, is a question of the obligation assumed by one inviting another to come upon his land; while the extent of the obligation assumed by inviting one to travel *gratis* in the invitor's carriage is a question of the liability of one who enters upon a gratuitous undertaking whether it be a gratuitous undertaking to keep, carry or lend.

As matter of authority *West* v. *Poor,* 196 Mass. 183, ought not to be overruled. It must be taken to be established in this Commonwealth that to charge a gratuitous bailee the plaintiff must make out gross negligence on his part. *Foster* v. *Essex Bank,* 17 Mass. 479. *Whitney* v. *Lee,* 8 Met. 91. *Smith* v. *First National Bank in Westfield,* 99 Mass. 605. *Jenkins* v. *Bacon,* 111 Mass. 373. The measure of liability of one who undertakes to carry *gratis* is the same as that of one who undertakes to keep *gratis.* To this is to be added the fact that in every case in England in which the question of the measure of liability of a person who enters upon any gratuitous undertaking has arisen the same conclusion has been reached. *Giblin* v. *McMullen,* L. R. 2 P. C. 317. *Moffatt* v. *Bateman,* L. R. 3 P. C. 115. *Coughlin* v. *Gillison,* [1899] 1 Q. B. 145. From an examination of the cases, apart from *Gill* v. *Middleton,* in which a contrary conclusion has been reached, it is apparent that they depend upon the decision in *Corrigan* v. *Union Sugar Refin-*

*ery,* 98 Mass. 577, or upon the proposition that degrees in negligence are not known to the common law. We are of opinion in the first place (for reasons already stated) that the principle of *Corrigan* v. *Union Sugar Refinery* does not bear upon the measure of liability of one who invites another to travel *gratis* in his carriage; and in the second place that in this Commonwealth at any rate degrees of negligence are known to the law. *Gill* v. *Middleton* was decided on the authority of cases in England and in the Supreme Court of the United States since repudiated in *Giblin* v. *McMullen,* L. R. 2 P. C. 317, and in *Railroad Co.* v. *Lockwood,* 17 Wall. 357, 382, 383. In *Gill* v. *Middleton* the proposition was stated that "The law furnishes no definition of gross negligence as distinguished from want of reasonable and ordinary care, which can be of any practical utility." That proposition is not law in this Commonwealth to-day. In addition the decision in *Gill* v. *Middleton* is in conflict with that in *Foster* v. *Essex Bank,* 17 Mass. 479, and the subsequent cases affirming that decision and with *West* v. *Poor.* We are of opinion that *Gill* v. *Middleton* and the cases following it * are not law in this respect and that they should be overruled in so far as they conflict with those cases. A word of explanation should be added with respect to what was said of *Gill* v. *Middleton* in the case of *Thomas* v. *Lane,* 221 Mass. 447. *Gill* v. *Middleton* involved (*inter alia*) these two propositions, namely: (First) that a defendant who undertakes to do an act *gratis* for the benefit of the plaintiff is liable if guilty of the requisite negligence and (second) that since "the law furnishes no definition of gross negligence as distinguished from want of reasonable and ordinary care, which can be of any practical utility" the defendant is liable in such a case if the plaintiff proves that he was guilty of ordinary negligence. In *Thomas* v. *Lane,* 221 Mass. 447, an attack was made upon the first of these two propositions. It was held that that attack had to fail. There was no occasion at that time to consider or rather to reconsider the second of these two propositions and that proposition was not then passed upon. So far as the first of these

---

* The rule of *Gill* v. *Middleton* was applied in *Riley* v. *Lissner,* 160 Mass. 330, *Buldra* v. *Henin,* 212 Mass. 275, *McLeod* v. *Rawson,* 215 Mass. 257, and it was referred to as law in *Dix* v. *Old Colony Street Railway,* 202 Mass. 518, 523, and in *Stewart* v. *Cushing,* 204 Mass. 154, 157.

two propositions is concerned *Gill* v. *Middleton* is law, as was stated in *Thomas* v. *Lane*, 221 Mass. 447, 449, but so far as the second proposition is concerned that case is now overruled.

Approaching the question apart from authority we are led to the same conclusion. Justice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay. There is an inherent difficulty in stating the difference between the measure of duty which is assumed in the two cases. But justice requires that to make out liability in case of a gratuitous undertaking the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing. It is a distinction which seventy-five years' practice in this Commonwealth has shown is not too indefinite a one to be drawn by the judge and acted upon by the jury.

We are of opinion that the decision in *West* v. *Poor* should be affirmed and followed in the case at bar.

In the view which we have taken it has not been necessary to consider the doctrine of *Southcote* v. *Stanley*, 1 H. & N. 247, as to which see *Plummer* v. *Dill*, 156 Mass. 426, 427; *Hart* v. *Cole*, 156 Mass. 475, 477.

The plaintiff has sought to bring this case within *Loftus* v. *Pelletier*, 223 Mass. 63, by suggesting that the jury could have found that the defendant gave the invitation to get the plaintiff's society at the time in question. In *Loftus* v. *Pelletier* the plaintiff had a right to be transported by reason of the fact that she had paid for such transportation by her services as a nurse. The transportation in the case at bar was gratuitous.

The entry must be

*Judgment on the verdict.*