## HONORA HART *vs.* ANN COLE.

Suffolk.   March 16, 17, 1892. — June 21, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Invitation to use Premises — Licensee.*

The defendant in an action to recover for personal injuries occasioned to the plaintiff was a tenant for life of a building consisting of several tenements, which she let to different tenants, who used the outside steps in common as a means of access to their tenements.   These steps were in the possession of the defendant, and it was her duty to keep them in reasonably safe condition for the use of

her tenants, and of other persons who were using them by her invitation, express or implied. There was evidence tending to show that the plaintiff, while coming from a wake in one of the tenements, was injured in passing down the steps by a defect negligently suffered by the defendant to be there. The deceased person was a brother of the wife of one of the tenants, and there was no evidence that he was an acquaintance of the plaintiff, or that she was expressly invited to the wake, or that she was in any way related to any of the occupants of the house. *Held, that the plaintiff was not on the defendant's premises under an invitation, express or implied, and that she was a mere licensee and could not recover.*

TORT, for personal injuries occasioned to the plaintiff by falling from the front steps leading into two houses in Boston belonging to the defendant. At the trial in the Superior Court, before *Barker*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The nature of the evidence appears in the opinion.

*E. M. Johnson*, for the defendant.

*H. F. Naphen*, for the plaintiff.

KNOWLTON, J. This case presents for consideration important questions which have never been decided in this Commonwealth. The defendant was a tenant for life of a building consisting of several tenements, which she let to different tenants, who used the outside steps in common as a means of access to their tenements. These steps were in the possession of the defendant, and it was her duty to keep them in a reasonably safe condition for the use of her tenants, and of other persons who were using them by her invitation, express or implied. There was evidence tending to show that the plaintiff, while coming from a wake in one of the tenements, was injured in passing down the steps by a defect negligently suffered by the defendant to be there. The deceased person was a brother of the wife of one of the tenants, and there was no evidence that he was an acquaintance of the plaintiff, or that she was expressly invited to the wake, or that she was in any way related to any of the occupants of the house. The jury were instructed that the defendant was liable to any one injured by a defect negligently suffered to be in the steps, if the injured person was lawfully going to or from the house in the exercise of due care, having lawful business there, and if the steps were apparently designed and intended as a means of access to the house and egress from it.

In *Plummer* v. *Dill, ante,* 426, we considered at some length the question whether an owner of real estate fitted up for use in business is liable for its unsafe condition to one who goes there on business of his own not connected with the business actually or apparently carried on there, and it was held that such a person is a mere licensee, to whom the owner owes no further duty than to refrain from putting traps or pitfalls in his way, and from negligently doing injurious acts to his prejudice. We have now to consider how far an owner of a dwelling-house is liable for its condition to one who comes there without express invitation, and not for the transaction of any kind of business carried on by any of the occupants; and also what should be deemed an implied invitation in a case of that kind. The defendant is liable to a visitor of the tenant for the condition of the steps, if the tenant himself would have been liable had the steps been included in the tenement let, and not otherwise. It seems clear that one coming to a dwelling-house to do business in which he alone is interested cannot expect a warmer welcome, or claim greater care for his safety, than if he went for the same purpose to the place of business of the occupant. In either case, he is a mere licensee. In preparing a convenient entrance to his house, one does not invite there pedlers, book agents, and others who come solely for their own convenience or profit. So far as they are concerned, his preparation of his premises for travel is an indifferent act. It has no such relation to them as it has to those who come to do business which he carries on there. The inducement, invitation, and implied representation of safety which he holds out to the latter is not for them, and the law imposes no affirmative obligation and creates no active duty to those who come as volunteers. He merely gives them free license and permission to use his premises, and impliedly agrees that he will not set traps for them, or wrongfully do anything to their injury. But, in general, they must take his premises as they find them.

How far an implied invitation is held out under all conceivable circumstances, and whether an implied invitation to come as a guest for friendly intercourse can create a liability greater than that to an ordinary licensee, it is not easy to decide. No case in this country involving these questions has been brought

to our attention. In *Southcote* v. *Stanley*, 1 H. & N. 247, it is said, in substance, that the liability of an owner of a dwelling-house to a visitor who is there on his express invitation is no greater than that to a licensee. The ground taken by Chief Baron Pollock and his associates seems to be, that a guest, gratuitously enjoying hospitality by express invitation at the house of his friend, must be presumed to have accepted the invitation with an understanding that he is to enjoy only such things as his host possesses, and that to such a guest the host owes no legal duty to furnish him with anything better than he has for himself. In the late case of *Indermaur* v. *Dames*, L. R. 1 C. P. 274, Willes, J. treats a guest as a mere licensee, and says, on pages 287, 288, that the protection in ordinary cases depends " upon the fact that the customer has come into the shop in pursuance of a tacit invitation given by the shopkeeper with a view to business which concerns himself. . . . The class to which the customer belongs includes persons who go not as mere volunteers, or licensees, or guests, or servants, or persons whose employment is such that danger may be considered as bargained for, but who go upon business which concerns the occupier, and upon his invitation, express or implied." In Pollock on Torts, at page 417, the author says, " With regard to the person, one acquires this right to safety by being upon the spot, or engaged in work on or about the property whose condition is in question, in the course of any business in which the occupier has an interest." In Campbell on Negligence, at page 64 (2d ed.), is this statement: " Invitation, therefore, in the technical sense of the word as employed in this class of cases, differs from invitation in the ordinary sense, — implying the relation between host and guest. In the case of host and guest, it would be thought hard that the hospitality of the former should expose him to the responsibilities implied by business relations. The guest must take the premises as he finds them, with any risk owing to their disrepair; although the host is bound to warn his guest of any concealed danger upon the premises known to himself."

It seems to be the rule in England, that an ordinary guest in a dwelling-house, although expressly invited, has no greater rights than a licensee.

The case at bar does not require us to decide whether that

rule should be applied in Massachusetts, for the plaintiff was not on the defendant's premises under an invitation, express or implied.  We have already said that the same rule should be applied to one visiting a dwelling-house out of curiosity, or for his own convenience, as if his visit were to a shop or other place of business.  We do not doubt that such relations of friendship, or of social intimacy, may exist between individuals as to warrant a finding of an implied invitation to come as a friend at any time, and that one in such relations visiting his friend would have the same rights as if expressly invited, whatever those rights may be.

Under the doctrines above stated, the plaintiff is forced to contend that whenever a wake is held there is an implied invitation to every one of the same nationality and religion as the deceased person to attend it.  Whatever ground there may be for holding that there is an invitation to relatives or near friends, there is no evidence to warrant the application of such a rule in this case; and there is no evidence, and there are no facts of common knowledge, to support it in reference to strangers.  It may be true that strangers to a deceased person and to his family sometimes go to a dwelling-house and attend his wake or his funeral.  But, in the absence of clear proof to support the contrary view, it must be held that such persons are mere licensees; and that the family of a deceased person, in having a funeral or wake in their dwelling-house, do not invite the whole world to come there.

In the present case there was no evidence to warrant the submission to the jury of the question whether the plaintiff was on the defendant's premises under an implied invitation, and the ruling that the defendant's liability extended to all persons lawfully on the premises was too broad.  For these reasons there must be a new trial.   We see no other error in the rulings.

*Exceptions  sustained.*