ROSE V. CARROLL, as Administratrix, etc., of DANIEL W. CARROLL, Deceased, Respondent, *v.* CITY OF YONKERS, Appellant.

Second Department, November 12, 1920.

Municipal corporations — motor vehicles — negligence — injury to city assessor while riding in motor car operated by department of public works — city not liable for negligence in failing to inspect steering gear — duty to licensee — erroneous charge.

A city which has purchased an automobile for its department of public works which was placed in the charge and control of the city engineer is not liable for the death of an assessor who, although not a city officer engaged about the city's business, solicited a ride in the automobile, which overturned owing to alleged negligence in failing properly to inspect the steering gear of the machine and to lubricate the same, there being no proof whatever that the city had ever authorized said department to carry outsiders in the machine.

Mere official possession of the car under the circumstances did not justify the city engineer in the belief that he was authorized to carry the intestate or any third person as a matter of favor and this is true although the city assessor, who was killed, was at the time discharging governmental duties.

The intestate, while not a wrongdoer or trespasser, occupied the position of a mere licensee and the only duty the licensor owed to him was to refrain from reckless, willful or wanton misconduct tending to injure the licensee.

Hence, it was error for the court to charge that the obligation of the defendant was reasonable care which involved a reasonable inspection of the car.

APPEAL by the defendant, the City of Yonkers, from an order of the Supreme Court, made at the Westchester Trial Term and entered in the office of the clerk of the county of Westchester on the 6th day of April, 1920, denying defendant's motion to set aside the verdict of a jury in favor of the plaintiff for the sum of $25,000 (reduced by stipulation to $20,000), and for a new trial made upon the minutes.

No appeal was taken from the judgment herein which was entered in the office of the clerk of the county of Westchester on the 27th day of February, 1920.

*William A. Walsh, Corporation Counsel* [*John J. Broderick* with him on the brief], for the appellant.

*Thomas J. O'Neill* [*Leonard F. Fish* and *James F. Dalton* with him on the brief], for the respondent.

JENKS, P. J.:

The action is for negligence whereby the motor car of the defendant was overturned and the plaintiff's intestate, a passenger therein, was killed. The contention of plaintiff is confined to defects in the steering apparatus, which she asserts could have been detected by proper inspection. The contention involves the proposition that such inspection would have shown the necessity of the application of a lubricant to prevent the defect. The learned court charged that the obligation of the defendant was reasonable care, which involved reasonable inspection to determine whether the motor car was in reasonably safe condition for work — an absolute and no delegable duty. As actionable negligence involves wrongful act or breach of positive duty (*Vaughan* v. *Transit Development Co.*, 222 N. Y. 83), the plaintiff must establish violation of a positive duty owed to her intestate. (*Sutton* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 243; S. & R. Neg. [6th ed. Street] § 8, and cases cited.) The question, then, is whether the defendant owed this obligation of reasonable inspection to *plaintiff's intestate*.

The defendant bought the motor car and thereupon assigned it to the official use of defendant's department of public works. At the time of the casualty the car was in charge and control of the bureau of the city engineer, a branch of that department. On the day of the casualty the intestate had *solicited* the city engineer for carriage to a quarter of the city of Yonkers. The engineer consented and went with the intestate in the car, which was driven by an employee of that bureau and of the city. But the intestate was not an officer or employee of that department or of that bureau. He was not servant or officer of the defendant, inasmuch as he was an assessor. (*Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *Heiser* v. *Mayor, etc.*, 104 id. 68.) There is no proof that the defendant had ever duly authorized the said department or the said bureau or any of its officers, servants or employees, or indeed any of defendant's officers, servants, agents or employees, to carry outsiders in that car. Mere official possession of the car under the circumstance did not justify the city engineer in the belief that he was authorized to carry this intestate or any third person as a matter of favor. It cannot be said that the city

engineer supposed, when he yielded to this solicitation for carriage, he could assume that such carriage was within the scope of his authority as city engineer, or in furtherance of the defendant's public business. For it appears from his undisputed testimony that there was " a question before the assessors as to whether certain houses had been built on certain lots within the city of Yonkers, knowledge or ignorance of which had been made to that Board (*sic*); it was to assist the office in the case that the Assessor wanted to go there." But when asked whether he would have gone whether the assessor went with him or not, the witness replied that he would not, that he had no particular interest to go there, it was something for the assessor's knowledge, that the witness went along with him to see what it was, to see what was in the city of Yonkers and what was not; if the city line was to be located it would have come as a general direction from the common council and he had not been so directed.

So far as this record shows, the intestate was not engaged about the city's business. Although an assessor of the city of Yonkers, he was discharging governmental duties. (Authorities, *supra;* Williams' Municipal Liability for Torts, 45.) There is no proof that the intestate was inquiring as to a " special assessment of a local character, made for some municipal improvement in which the general public has no direct interest." (See Id. 46.) The city engineer, at most, but accompanied the intestate as a volunteer. There is no proof that the defendant knew or should have known of this journey or knew or should have known that the department or its bureau or any of its officers, employees or agents had ever carried outsiders in the car. The testimony of a former commissioner of public works that he and the mayor and other officials had agreed that the car might be used by city officials on city business, did not avail the plaintiff's intestate. It is not shown that the intestate ever heard of this determination. Even if he had, it is not shown that these officials had any authority over the disposition or use of the car, and their mere agreement or direction would not bind the defendant. (*Smith* v. *City of Rochester*, 76 N. Y. 506.) Moreover, the intestate was not a city officer engaged about the city's business. The

mere fact that the intestate entered the car as· a self-invited passenger with the assent of the city engineer, did ,not affect his *status* so far as the defendant was concerned. In any event, it was not enough that the intestate " believed that the use was intended; he must bring his belief home to the owner by pointing to some act or conduct of his that afforded a reasonable basis for such a belief." (*Furey* v. *N. Y. C. & H. R. R. R. Co.*, 67 N. J. L. 275.) Official possession does not imply private use.

The intestate was not a wrongdoer, a trespasser, so to speak, when he entered the car and journeyed in it, inasmuch as he had the acquiescence of the person then in control of the car. But I think that upon this record the *status* was but that of a licensee. (*Vaughan* v. *Transit Development Co.*, 222 N. Y. 79; *Heskell* v. *Auburn L.; H. & P. Co.*, 209 id. 90.) I think that the language of the court in *West* v. *Poor* (196 Mass. 183) applies: " The nearest analogy that occurs to us is that of a self invited guest in whose presence the host acquiesces and whose enjoyment he seeks to promote, or that of a gratuitous bailee. In the former case the degree of care required is that of . licensor and licensee (*Plummer* v. *Dill*, 156 Mass. 426; *Hart* v. *Cole*, 156 Mass. 475), which, as has often .been said, requires only that the licensor shall not set traps for the licensee and shall refrain from reckless, wilful or wanton misconduct tending to injure·him. *Massell* v. *Boston Elevated Railway*, 191 Mass..491." In *Patnode* v. *Foote* (153 App. Div. 494) the court cites and adopts the doctrine of *Pigeon* v. *Lane* (80 Conn. 237) as to a licensee, and says: "A person ·thus invited to ride stands in the same situation as a bare licensee who· enters upon real property which the licensor is under no obligation to make safe ·or keep so, but who is liable only for active negligence," citing *Birch*·v. *City of New York* (190 N. Y. 397). In *Birch's Case* (*supra*, 404)· the court held that such an inspection as the court in the case at bar charged was an obligation of this defendant, was not the obligation owed to a bare licensee. (See, too, *Weitzmann* v. *Barber Asphalt Co.*, 190 N. Y. 452; *Vaughan* v. *Transit Development Co.*, *supra*.)

There are other questions that arise in such a case, as to the power of the municipal corporation to purchase and to use a

motor car even for this department or its bureau, and of the consequent application of the doctrine of *Smith* v. *City of Rochester* (76 N. Y. 506) and cases cited, but in view of my disposition of this appeal I have not deemed it essential to discuss them.

I advise that the order be reversed and that a new trial be granted, with costs to abide the event.

RICH, PUTNAM and BLACKMAR, JJ., concur; KELLY, J., concurs in separate opinion.

KELLY, J.:

I concur.

The present general use of automobiles by city departments attaches additional importance to the legal questions involved in this case. Is the city liable for injuries occasioned by these automobiles, whether from lack of inspection rendering the automobile unsafe or from negligence in operating the machine? I presume it depends on the facts of the particular case, the use to which the car is put, the persons operating it or riding in it. We have recently decided that the owner of an automobile who invites a friend to ride is bound to use reasonable care in operating the car and is responsible for the negligence of the chauffeur in such operation. (*Lowell* v. *Williams*, 183 App. Div. 701; affd., 228 N. Y. 592.) But municipal corporations are not liable in all cases as in the case of an individual. One well-established principle is that there is no liability when the wrongful act is in the performance of a governmental function as distinguished from acts done for the benefit or profit of the city itself. (*Maxmilian* v. *Mayor*, 62 N. Y. 160; *Smith* v. *City of Rochester*, 76 id. 506; *Bailey* v. *Mayor, etc.*, 3 Hill, 531; *Hill* v. *Boston*, 122 Mass. 344.) The difficulty arises in distinguishing corporate duties from those which although performed by city employees are for the benefit of the State or the general public.

The automobile in the case at bar was purchased and paid for by the city of Yonkers for the use of the city engineer, an officer appointed pursuant to the Second Class Cities Law (Consol. Laws, chap. 53 [Laws of 1909, chap. 55], § 97). The city engineer is an official appointed pursuant to the act

of the Legislature in all of the second class cities in the State. His duties are prescribed in section 98 of the act: " § 98. Duties of city engineer. It shall be the duty of the city engineer to perform all the ordinary engineering and surveying services in the affairs and business of the city and to supervise, under the general direction of the commissioner of public works, all the work done for the city in which the skill of his profession may be required or useful. He shall, under the direction of the commissioner of public works and the ordinances of the common council, act as the superintendent of public buildings, bridges, docks and wharves. He shall perform such other duties as may be prescribed by the commissioner of public works or by ordinance of the common council. He shall devote his time exclusively to the service of the city."

These duties might well include governmental as well as purely corporate work, and the record is not very clear on this subject. If his duties were altogether governmental I doubt if the city would in any case be liable for his failure or the failure of his subordinates to properly inspect the automobile. In his request for the automobile the city engineer says that the " Bureau [Department of Public Works, Bureau of Engineering — Second Class Cities Law, *supra*, art. 7] has under supervision some 30 contracts for public work," and other contracts are contemplated and it is necessary for the city engineer to go over the ground. The powers and duties of the department of public works in a city of the second class include control of highways, public places, parks, docks, bridges, sewers, lighting, baths, recreation piers, city water works and general supervision and control of all work performed under any contract of the city for local or other improvements. (Second Class Cities Law, *supra*, § 91, as amd. by Laws of 1912, chap. 189.) The city engineer appointed the chauffeur of the car from the municipal civil service list. Whether the defendant city would be liable to invitees in any case for injuries caused by this automobile, I think would depend upon the particular work in which it was engaged at the time.

But, as the presiding justice points out, on the day of the accident the car was not engaged in the performance of any municipal work. Whether we consider the deceased assessor

as in control of the automobile and the chauffeur, or that the city engineer in accompanying him retained control, would seem to make no difference. The work was the assessor's work, the trip was solely for the convenience of the assessor. He might have walked or ridden in a street car, or hired a hack. He was not acting for the defendant city, he was not selected by the defendant and it could not control his acts. His powers and duties were defined by the Legislature, and, as Judge EARL says in *Tone* v. *Mayor* (70 N. Y. 157, 165), they " were not what might properly be called corporate powers, and they were not to be exercised for the peculiar benefit of the corporation in its local or special interest, but for the public good, in obedience to the mandate of the Legislature." I agree with the presiding justice that if he saw fit to ride in the automobile of the city engineer he must take it as he finds it, and plaintiff cannot complain that its mechanism was not in safe condition. (*Walsh* v. *F. R. R. Co.*, 145 N. Y. 301.)

Order reversed and new trial granted, with costs to abide the event.