No. 26,882.

RICHARD FOSTER NEWLIN, a Minor, by HARVEY E. NEWLIN, His Father and Next Friend, *Appellee*, v. THE STANDARD OIL COMPANY and E. W. HULL, *Appellants*.

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Liability for Injury to Third Persons—Respondeat Superior—Scope of Authority—Child on Running Board of Motor Vehicle.* The evidence considered in a case in which the principle of *respondeat superior* is invoked, and *held,* the employer is not liable for injury to a child six years old, occasioned by operation of a motor vehicle by an employee who, after he had refused to permit the child to ride, discovered the child had climbed on the running board, and negligently failed to stop the truck immediately.

Appeal from Jefferson district court; MARTIN A. BENDER, judge. Opinion filed December 11, 1926. Affirmed as to appellant Hull; reversed as to appellant The Standard Oil Company.

*Bennett R. Wheeler, S. M. Brewster* and *John L. Hunt,* all of Topeka, for the appellants.

*H. T. Phinney,* of Oskaloosa, *Fred Robertson, R. J. Higgins* and *Edward M. Boddington,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a minor to recover damages from the Standard Oil Company and one of its employees, occasioned by negligent operation of a motor vehicle by the employee. Plaintiff recovered, and defendants appeal.

Defendant Hull solicited and filled orders for the company's pe-

Master and Servant, 39 C. J. pp. 1282 n. 69, 1283 n. 72, 1292 n. 72, 1304 n. 83; 18 R. C. L. 786 *et seq.;* 4 R. C. L. 1204; 6 R. C. L. 1084.

troleum products, under an arrangement which created the relation of employer and employee. In making deliveries, he used a tank belonging to the company, mounted on an auto truck which he owned. On the day of the accident he delivered coal oil at the Eastlock farm near Valley Falls. The dwelling house was 300 yards from the highway. Plaintiff, who was six years old, was visiting at the farm. When Hull was about to depart, plaintiff asked Mrs. Eastlock if he could ride on the truck, and she told him not to do so. Plaintiff then asked Hull if he could ride down to the gate and shut it. Hull told him he did not want him to do so, he might fall off and get hurt. Hull then started the truck toward the highway. When he had gone 50 or 75 yards, he noticed that plaintiff was standing on the running board of the truck. Hull testified he then told plaintiff to be sure and hang on, and not fall off. Plaintiff testified he did not hear this admonition, but saw Hull look out. There were little ditches in the road which caused the truck to tilt. Hull drove carefully and as slowly as he could, at a rate of five or six miles per hour, and after he had gone 150 feet, he missed plaintiff. Plaintiff testified the truck "hit a bump," and he fell off. Just at the time he fell off, he was endeavoring to sit down on the running board. He had been holding to the top of the truck door with one hand. In trying to sit down, he released his hold for an instant, and at that instant the truck struck the bump, and he fell off. The rear wheel of the truck passed over his right leg, and caused a greenstick fracture. When Hull observed plaintiff was no longer on the running board, he stopped the truck, went back, picked plaintiff up, and carried him to the house. The jury found Hull was negligent in not stopping the truck immediately when he discovered plaintiff was on the running board, and the principal question is whether the company must respond in damages for the consequences of Hull's negligence.

Before the truck was put in motion, plaintiff was denied permission to ride, and when he climbed on the running board his legal status, notwithstanding his lack of discretion, was that of a trespasser. Hull's discovery that plaintiff was on the running board was discovery of the fact by the company. When the discovery was made, the company's liability was limited to consequences of intentional, malicious, or wanton injury.

There is no evidence that Hull had authority to permit children

or other passengers to ride on the truck. Filling Mrs. Eastlock's order for oil, including driving away from the Eastlock premises, did not by implication embrace such authority, and Hull's assent to plaintiff's riding on the truck, after finding plaintiff was on the running board, was outside the scope of his authority. He had no more authority from the company to permit plaintiff to continue to ride on the running board than he had to invite plaintiff to ride there in the first instance. His acquiescence, whether or not plaintiff heard what he said, was equivalent to permission on his part, and constituted plaintiff a licensee, but not of the company. Plaintiff was Hull's licensee only—the licensee of an employee not authorized to license for the company, and not acting in furtherance of his employer's business in granting the license.

"If he were in the car with the consent of the chauffeur, then as to him he was a licensee, but not as to the defendant. The chauffeur, in permitting him to ride, was not acting within the scope of his employment or doing anything to further the defendant's interests." (*Rolfe v. Hewitt*, 227 N. Y. 486, 490.)

"The plaintiff was not being carried in the automobile at the time he was injured by reason of any invitation of the defendant or of any one in his employ who was authorized by him to extend such an invitation. It is plain therefore that he was a trespasser and cannot recover." (*Walker v. Fuller*, 223 Mass. 566, 568.)

The result is that, as to the company, plaintiff continued to be in the situation of a trespasser after Hull discovered his presence on the running board, and the company's liability, if any, was limited to consequences of intentional, malicious, or wanton injury.

When plaintiff undertook to change his position on the running board and was jarred off, Hull was returning from a place where he had delivered coal oil, and to that extent was driving the truck for the company in the course of his employment. But to the extent that he was knowingly carrying a child in a position of danger, he had deviated from the course of his employment, and could not bind the company by his conduct.

"The defendants were contractors and excavators, and owned many teams. There was nothing to show that it was any part of their business, or that it was their habit or custom, to furnish horses or colts to ride, or to allow boys to ride upon them, or that they in any way ever authorized or permitted Frank to do this. Under this state of things, we are unable to see how the invitation by Frank to the plaintiff to ride upon the colt, although given while Frank was engaged in his employment, can be considered to be an act done in the course of such employment, or for the purpose of doing the business of his masters. . . .

Newlin v. Standard Oil Co.

"An act done by a servant while engaged in his master's work, but not done as a means or for the purpose of performing that work, is not to be deemed the act of the master." (*Bowler v. O'Connell,* 162 Mass. 319, 320.)

Disregarding refusal of permission to do so, plaintiff boarded the truck. Hull then permitted him to remain on the truck and, instead of stopping at once, drove on. The consequence was, plaintiff fell off, and was injured. So far as the company is concerned, at the moment plaintiff fell in front of the wheel of the truck, Hull might just as well have been on a detour for the child's or his own personal pleasure. After Hull told plaintiff he should not ride on the truck, Hull received no increment of power from any source, to subject the company to liability. Neither he, nor the child, nor both acting in concert, could generate such power, and the consequence of the intrusion by plaintiff and the constructive detour by Hull—fracture of plaintiff's leg—cannot be dissociated from the intrusion and detour themselves. The principle involved was perceived and enunciated by Justice Holmes when a member of the Massachusetts court, in the opinion in the case of *Driscoll v. Scanlon,* 165 Mass. 348:

"It was argued that we might look only to the later moment when the plaintiff was under the wheels, that it did not matter how he got there, and that the defendant was liable for running over the plaintiff, if he would have been in case his cart had run over a third person when his driver was asleep. But it does make all the difference in the world how the plaintiff got under the wheels. The defendant was not bound to expect or look for people falling from his cart, where they had no business to be, and persons who got into it took the risk of what might happen, as against him. The driver's slumber was so intimately connected with the unauthorized act that it is impossible to separate the two." (p. 349.)

In an article by Frank W. Rogers in 12 Virginia Law Review (November, 1925), entitled "Liability of the Master for Injuries Received by Children on or about Moving Vehicles at the Unauthorized Invitation of the Servant in Charge," appears the following:

"The first essential is a proper conception of the doctrine of *respondeat superior.* . . .

"The second essential to a correct solution of these cases is recognition of a corollary of the first proposition: the exemption of the master from liability for the act of the servant without the scope of his employment extends also to the proximate and direct consequences of the act. It is obvious that if the master is not responsible for the act of a servant in striking the plaintiff, neither can he be held for the effects of the blow. . . .

"The third essential principle is also an obvious corollary of the first propo-

Newlin v. Standard Oil Co.

sition: the liability of the master is not affected by the infancy of the servant's invitee. 'His youth might excuse contributory negligence—but cannot create rights or duties which have no other foundation.' For, as has been seen, the responsibility of the master depends on the relationship between him and the person purporting to act as his servant." (pp. 34, 35.)

The article from which the quotation is taken is an example of the critical and constructive legal studies which have become a feature of the magazines published by the leading law schools. The article systematizes the law on the subject indicated by its title, and renders it unnecessary for the court to review the authorities.

The action was predicated on negligence. Intentional, malicious or wanton conduct on the part of Hull was not pleaded or submitted to the jury. The facts have been fully stated. The child's impulse to ride down to the gate was so strong, he could not accept as final refusals of permission to do so, and when Hull discovered him on the running board, Hull yielded, and suffered him to remain. Hull did not push him off, or speed up the truck to jolt him off, or do any other act indicating reckless indifference to the child's safety. He was merely imprudent in not stopping the truck. On principle, the company would not be liable if Hull had been guilty of wantonness; but that subject is not now before the court for adjudication.

The entire record considered, error which prejudicially affected the substantial rights of Hull does not appear.

The judgment of the district court against the Standard Oil Company is reversed, and the cause is remanded, with direction to enter judgment in favor of that company. The judgment against Hull is affirmed.