[Civ. No. 4026. Third Appellate District.—March 28, 1930.]

JOHN ALBERS, Respondent, v. SHELL COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

Irving D. Gibson and Seth Millington for Appellants.

George F. Jones and Devlin & Devlin & Diepenbrock for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendants in an action prosecuted to recover damages for the death of his son, Winfrid Albers, by reason of the overturning of an oil truck belonging to the defendant corporation, and driven by the defendant Morton. From this judgment the defendants appeal.

The cause of action is based upon the alleged operation of the truck referred to while the steering mechanism thereof was in a defective and dangerous condition.

The complaint alleges in substance that by reason of the wilful, wanton and gross negligence of the defendants, the nut which holds the steering-wheel in place upon the steering-shaft of the truck was absent; that the absence of the retaining nut made it probable that a jolt or jar would detach the adjustment of the steering-wheel from the steering-post and cause loss of control of the truck; that knowing the existence of the dangerous and unsafe condition of said truck, the defendants carelessly, wantonly and negligently caused said truck to be driven over a certain highway leading to a bridge crossing Cherokee channel in Butte County; that as the truck was being driven, upon the approach to said bridge, the steering-wheel became detached, the truck unmanageable, and as a consequence broke through the railing of the bridge referred to and fell to the bed of

the canal below, resulting in the death of Winfrid Albers, who was then and there riding upon said truck. While the complaint does not allege specifically that the defendants knew of any probability that the steering-wheel would become detached and cause the driver to lose control of the truck by reason of the missing nut, it does set forth that the absence of the nut from the steering-wheel made it probable that the steering-wheel would become detached from the steering-post and result in a loss of control of the management of the truck, and that the defendants, well knowing the existence of said dangerous and unsafe condition, carelessly, wantonly, etc., caused the truck to be driven, which brings home to the defendants the allegation of knowledge of the hazard of driving the truck with defective steering mechanism.

The record shows that the defendant Morton, on the day of the accident, was making his rounds in the delivery of gasoline and oil; that in so doing he stopped at a certain farmhouse where Winfrid Albers had been working. It appears that the defendant Morton and Albers had been acquainted and friends for some years; that the deceased Winfrid Albers, having in mind returning to the town of Biggs, without any invitation from the defendant Morton, got upon the truck to ride into town. The record shows that the allowing of anyone to ride on the truck, other than employees of the company, was against the rules, and that there was a brass plate upon the dashboard directly in front of where Albers had taken his seat, on which plate were the words "Authorized employees, only, allowed on this vehicle. Shell Company of California." It would appear also from the record that Albers and a bystander had a conversation before Albers mounted the truck relative to the rules of the company against anyone riding with the driver, and was also offered a ride into town in a private conveyance. After taking his seat in the cab of the truck, as stated, the defendant Morton, with Albers sitting at his right, propelled the truck along the highway leading to the bridge referred to. It appears from the testimony of the driver that while the highway thus traveled was in a good condition, there were certain places where it was slightly rough. An examination of this testimony shows, however, that it was not such as to impede progress or

cause any particular inconvenience to anyone using the highway. Just as the truck approached the Cherokee canal bridge, a slight jar was experienced caused by a slight roughness in the pavement, the steering-wheel became detached from the steering-post, the driver lost control of the truck, and it plunged through the railing of the bridge to the bed of the canal below. Just prior to reaching the bridge, the truck had been running at a speed of from twenty to twenty-five miles per hour. As it approached the rise to the bridge, the defendant Morton testified that he slowed down to between fifteen and twenty miles per hour.

On the part of the plaintiff it is contended that the circumstances surrounding this case show wanton and gross negligence. On the part of the appellants it is contended that negligence only is shown, if at all, and that as Albers occupied the position of a trespasser upon the truck, no liability has been incurred on account of his death.

The testimony shows that the steering-wheel was not placed upon the steering-shaft by hydraulic pressure, but was fitted down over the tapering end of the shaft by the use of a hammer; that there was a slot in the steering-shaft, and also in that part of the steering-wheel which fitted over the steering-shaft, into which a way-key was fitted. This, for the purpose of preventing the steering-wheel turning upon the steering-shaft. Then, to hold the wheel and the way-key in place, the nut referred to was screwed down upon the steering-shaft, threads being cut in the steering-shaft for that purpose. While the nut was in place, the way-key could not become disengaged, and the steering-wheel would not turn upon the steering-shaft. With the nut displaced, the natural jar of the truck might loosen the way-key, and likewise, tend to loosen the steering-wheel from the steering-shaft. In other words, the tapering end of the steering-shaft and the tapering orifice in the steering-wheel, fitting over the same, would not be so tightly engaged, nor would the way-key be so firmly fixed as to prevent loss of control of the truck. Two witnesses called by the plaintiff, who had had considerable experience in the handling of trucks of the same model as the one involved in this action, testified that the only appliance which held the steering-wheel in place on the steering-shaft was the nut referred to. The defendant Morton testified that he knew

that the function of the nut referred to was to hold the steering-wheel on the steering-post; that the wheel was not very tight when it came off, or it would not have come off.

The testimony further shows that the taper fit on the steering-post was to make it still more easily detachable; that while the nut was on the steering-post, the wheel could not come off, and while the way-key was in the slot referred to, the steering-wheel and the steering-shaft would move in unison. The testimony further shows that by placing the steering-wheel over the steering-shaft, with the key in place, and tapping the wheel with a hammer, it would hold temporarily without the presence of the nut.

It appears from the record that the truck in question was examined by the jury; that the steering-wheel had been replaced upon the steering-post with the key in the keyway; and that it could not be lifted from the post at the time it was examined but had to be tapped two or three times with a hammer before the steering-wheel and steering-post could be disengaged. The testimony does not show how the steering-wheel was replaced upon the steering-post, or just what force or hammering was used in replacing it after it had been disengaged at the time of the accident referred to. There was some testimony also introduced on the part of the defendants to the effect that the nut on the steering-post above the steering-wheel was not the only safety device; that without the nut, the tapering adjustment and the key referred to would suffice to control the movement of the truck.

The record further shows that the defendant Morton, the driver of the truck, had reported the loss of the nut from the steering-post to the mechanic having charge of the division where the defendant Morton was employed, and that for three or four days he had been driving the truck with the nut missing; that nothing had been done, so far as the defendant Morton knew, toward replacing the nut; and further, that the truck had been kept at the company's garage and at a place where repairs were made. No question is raised as to the amount of the damages awarded.

The testimony further shows that while the deceased was a minor, he was nevertheless over the age of twenty years, and was seated immediately behind the sign on the dashboard, in plain view thereof, whereon were the words to

which we have referred, stating that only employees were allowed to ride upon the truck. In addition, the defendant Morton testified that he did not apprehend any danger from driving the truck with the nut missing from the top of the steering-post. The superintendent of the auto department of the division of the Shell Company involved in this action, testified that the nut was only one of the safety factors; that the way-key and the tapering of the fitting parts between the steering-wheel and the steering-shaft were likewise safety factors, and when they were in proper position, the truck would respond to the turn of the wheel.

The record further shows that one of the witnesses for the plaintiff, named Hayes, tried to remove the steering-wheel from the automobile while it was in the courtyard, and was unable to lift the wheel off the steering-shaft, although he was a large man, six feet one inch in height and weighing about two hundred pounds, and it was necessary to take a hammer and strike the steering-wheel from the under side, twice on one side of the steering-post and once on the other side of the steering-post.

Upon the record showing the foregoing facts, it is contended on the part of the appellants that the driver Morton was acting outside the scope of his employment in transporting Albers upon the truck, in violation of the orders of his employer; that such transportation was solely for the accommodation and convenience of Albers, and not on any business of the company; that the evidence fails to show any wilful or wanton act or omission on the part of the driver Morton, resulting in the death of Albers; that Albers was a trespasser upon the truck, and one as to whom no duty was owed; also, that the court committed prejudicial error in instructions to the jury concerning wilful, wanton and gross negligence.

The law appears to be very well settled in this state that as to a trespasser, one owes a duty only to abstain from wilful or wanton conduct. (*Giannini* v. *Campodonico,* 176 Cal. 548 [169 Pac. 80]; *Gordon* v. *Roberts,* 162 Cal. 506 [123 Pac. 288]; *Sessions* v. *Southern Pac. Co.,* 159 Cal. 599 [114 Pac. 982].) In support of their contentions, appellants cite the case of *O'Leary* v. *Fash,* 245 Mass. 123 [140 N. E. 282, 283], where it is held that a principal is not responsible for acts outside the real or apparent scope of

authority, and that an invited guest riding on a truck could recover only in case of gross negligence. In the same case it is held, however, that a trespasser may recover for wilful, wanton and reckless misconduct. The facts of the O'Leary case are as follows: The truck driver was engaged in delivering ice-cream, and the driver, while in the course of his employment, was asked by the plaintiff and a companion for a ride; that the two got on the truck; that the plaintiff sat with her feet over the right-hand side of the truck, and there was nothing on the seat to keep her from falling off; she could hold on to the seat only with her right hand. The driver of the truck had proceeded about three-quarters of a mile, and just before coming to an intersecting street was driving at the rate of between forty and forty-five miles per hour, and without checking the speed of the truck, turned into an intersecting street, whereby the plaintiff was thrown from the truck and injured. Upon this statement the court said: "The plaintiff was a guest of the driver of the truck, who permitted her to ride with him gratuitously. As against him she could recover only by proof of gross negligence." (Citing a number of authorities.) "Her rights against the defendant can mount no higher." The defendant was the owner of the truck and the employer of the driver. The trial court directed the verdict for the defendant, and this action was affirmed upon appeal. While this decision is from one of the most learned and highly respected courts in the country, and appears to be supported by a number of previous decisions in the same state, we cannot agree with the holding of the court that the testimony did not present circumstances sufficient to go to the jury, on the issue of wilful, wanton and reckless conduct. Knowing the position of the plaintiff upon the seat beside him, the driver, with his truck speeding at the rate of between forty and forty-five miles per hour, suddenly turned it into an intersecting street. That this conduct was wilful and intentional seems to us beyond question. He may not have intended to injure the plaintiff, but he certainly intended to perform the act which resulted in injury. That propelling an automobile in such a manner furnishes facts from which the jury might conclude that the driver was acting wantonly and recklessly, appears also to us as being very clearly shown.

In the case of *Newlin* v. *Standard Oil Co.*, 122 Kan. 86 [251 Pac. 394], relied upon by appellants, it was held that the company was not liable for an injury to a six year old child occasioned by operation of a motor vehicle by one of his employees who, after he had refused to permit the child to ride, discovered the child had climbed on to the running-board, and negligently failed to stop the truck immediately. In that case it appears that the driver propelled the truck forward at a rate of five or six miles per hour, and had passed through some little ditches which caused the truck to tilt, and after going about 150 feet, he missed the plaintiff. It appears that the child fell off the running-board and was injured by one of the wheels of the truck. While holding that the employer, the Standard Oil Company, was not responsible by reason of the fact that there was no wilful or wanton conduct, or gross negligence, the court nevertheless affirmed the judgment against the driver of the truck. There were rules in that case the same as in this, forbidding drivers to permit guests or others to ride on the truck. It may be mentioned, however, that there are no facts in the case of *Newlin* v. *Standard Oil Co., supra,* showing any wilful or wanton conduct, or gross negligence. It was simply a case of ordinary negligence, and the driver was held for his failure to use ordinary care. It is true that in the case just referred to, the opinion contains more *dicta* to the effect that the same rule would apply in the case of wilful or wanton misconduct on the part of the driver of the car, which, however, is not the law in this state.

In *Zampella* v. *Fitzhenry,* 97 N. J. L. 517 [24 A. L. R. 666, 117 Atl. 711], the court of errors and appeals in New Jersey held that an employer was not liable where a fifteen year old boy had been invited to ride with the driver and was injured by falling off the running-board of the truck. It appears that while the boy was riding on the running-board, the truck struck a rut, causing the boy to fall. Here, again, there is no wilful or wanton misconduct or gross negligence shown on the part of the driver of the truck. The circumstances present only a case of want of ordinary care.

In the case of *Goldberg* v. *Borden's Condensed Milk Co.,* 227 N. Y. 465 [125 N. E. 807], it appears that a boy was

injured by being thrown from a delivery wagon, where he was riding contrary to express orders, by the driver whipping up the horse so that the wagon was started suddenly. It was held in that case that the employer of the driver was not liable. The decision in this case was based upon the case of *Rolfe* v. *Hewitt*, 227 N. Y. 486 [14 A. L. R. 125, 125 N. E. 804], where it was held that the evidence was insufficient to warrant the submission of the cause to the jury on the ground of wilful misconduct. There, the person injured was a guest of a chauffeur, and the question involved and decided was that the act of the chauffeur was outside the course of his employment. It appears from an examination of this case that only the question of negligence on the part of the chauffeur was involved, and not a question of wilful or wanton misconduct or gross negligence. The facts show that the driver and the guest had gone to a certain village on an errand, had bought some materials, and on the way back, from some cause not stated, the driver lost control of the car. There is no evidence in the case showing that the car was defective in any particular, or in any hazardous or unsafe condition.

The case of *Armstrong's Admr.* v. *Sumne & Ratterman Co.*, 211 Ky. 750 [278 S. W. 111], does not involve any question of wilful or wanton misconduct, or gross negligence, but is simply one of ordinary negligence, and a case involving the employment of a minor under fourteen years of age, and therefore need not be further considered.

In the case of *Conner* v. *Citizens' Street Ry. Co.*, 146 Ind. 430 [45 N. E. 662], a case also cited by appellants, it was held that the company was not liable upon evidence showing that the driver, upon a signal from plaintiff who was on the car with a friend, that the friend safely alighted while the car was in motion, and that the driver then started up by striking the mules with his whip, thereby throwing the plaintiff off, is insufficient to support a charge of wilful injury, in the absence of any proof that the driver knew the plaintiff was about to alight. This very statement shows that no wilful or wanton conduct was involved, or even gross negligence. There was another question, however, involved and considered by the court in that case, to wit, the contributory negligence of the plaintiff in attempting to alight while the car was in motion.

The case of *Holwerson v. St. Louis & S. Ry. Co.*, 157 Mo. 216 [50 L. R. A. 850, 57 S. W. 770], simply holds that contributory negligence bars recovery in the absence of wilful or wanton misconduct.

In the case of *Christie* v. *Mitchell*, 93 W. Va. 200 [116 S. E. 715], a case was presented where a driver of a truck, contrary to the owner's orders, had invited children to ride on the truck. It appears that the children had been engaged in some quarrel with other children who were not allowed to ride on the truck. After the truck had started, one of the children, who was holding himself on the truck by grasping a stake thereon, loosened his hold to shake his fist at one of the children with whom he had had a quarrel, and at this instant the truck, which was moving at a speed of about six miles per hour, struck a rut, causing the boy to fall from the truck and to be injured by one of the wheels running over him. There being no showing of wilful or wanton conduct on the part of the driver, the owner was held not liable. In that case a number of authorities are cited, and the court reaffirmed the rule that the master owes no duty to one who is a trespasser or a mere invitee or licensee, except not to wantonly and wilfully injure him. (Citing a large number of authorities.) The same rule is followed in the case of *Carroll* v. *City of Yonkers*, 193 App. Div. 655 [184 N. Y. Supp. 847], where it was further held that the city owed no duty to inspect the steering apparatus of its automobile to discover whether it had been properly lubricated, etc. The contention was that the inspection of the steering-gear would have exhibited the defect mentioned. In deciding this case the court refers to the case of *Plummer* v. *Dill*, 156 Mass. 426 [32 Am. St. Rep. 463, 31 N. E. 128], and *Hart* v. *Cole*, 156 Mass. 475 [16 L. R. A. 557, 31 N. E. 644], where it said that as to licensees, the law requires only that the licensor shall not set traps for the licensee, and shall refrain from reckless, wilful or wanton misconduct tending to injure him. And further, that a person invited to ride, stands in the same situation as a bare licensee who enters upon real estate which a licensor is under no obligation to make safe or keep safe, but who is liable only for active negligence. (*Pigeon* v. *Lake*, 80 Conn. 237 [11 Ann. Cas. 371, 67 Atl. 886].)

In the case of *Stipetich* v. *Security Stove & Mfg. Co.*, (Mo. App.) [218 S. W. 964], a case specially called to our attention by the respondent, the Court of Appeals of Kansas City was dealing with an injury to a minor who was in the position of a licensee as to the driver of the truck. It appears by the facts stated in the opinion in that case that the boy killed was of the age of ten years. The boy in question was riding on the running-board of the truck, or, rather, was on the running-board of the truck when the driver started the same suddenly, throwing the boy to the ground, one of the wheels passing over him. As the court pointed out in that case, there was active misconduct on the part of the driver, which the court considered sufficient to take the case to the jury on the ground of the wilfulness of the driver in starting the truck in the heedless and reckless manner referred to.

In *Higbee Co.* v. *Jackson,* 101 Ohio St. 75 [14 A. L. R. 131, 128 N. E. 61, 63], the Supreme Court of Ohio had under consideration the injury to a minor child by reason of the alleged wilful and wanton conduct in driving one of the defendant's delivery wagons. The facts stated in the opinion show that the truck in question was being driven in a westerly direction on Euclid Avenue, in the city of Cleveland, a much traveled street; that the injured minor, being a boy about fourteen years of age, was riding on the running-board of the truck; that while he was riding in such position, with the knowledge of the driver, the driver, propelling the truck at the rate of about forty-five miles per hour, ran it from the north or right side of the street over to the center line and on to and along the left side of the street, being the wrong side of the street on which to propel the automobile, and in so doing ran against the wagon which was proceeding easterly on to the south side of the street. The boy in question was on the running-board which came in collision with the wagon. The collision resulted in serious injury to the boy. The court, in the consideration of that case, holds that if the boy was a trespasser, he was entitled to the rights of a trespasser, which would safeguard him against any wilful or wanton misconduct. The court likewise in that case approves the rule, which it states in the following language: "An action to recover for an injury occasioned by negligence, the element of wilfulness being absent, will not lie unless

there exists between the defendant and the person injured a relation out of which there arises a duty to the former to exercise care toward the latter.'' Further, in the same opinion, the court defines what it understands to be ''wilful and wanton conduct,'' as follows: ''The authorities are uniform in holding that to constitute wilful or wanton negligence, it is not necessary to show ill-will toward the person injured, but an entire absence of care for the life, person or property of others which exhibits indifference to the consequences, makes a case of constructive or legal wilfulness. A complete indifference to the consequences distinguishes wrongs caused by wantonness and recklessness from torts arising from negligence.'' (Citing many cases to support the rule thus stated.)

In *Ziehm* v. *Vale,* 98 Ohio St. 306 [1 A. L. R. 1381, 120 N. E. 702], injury to a four year old child was involved, who had been driven off a truck belonging to the defendant, by the defendant's truck driver, who returned to the truck without noticing whether the child had again climbed on to the running-board of the truck. The court held that the starting of the truck without exercising care to see that the child was not in a perilous position constituted negligence. Neither wilfulness nor wantonness was involved.

In the case of *Psota* v. *Long Island Ry. Co., etc.,* 246 N. Y. 288 [62 A. L. R. 1163, 159 N. E. 180], it was held that a suit imposing liability upon the owner of an automobile for a personal injury resulting from its negligent operation in the business of such owner, or otherwise, by any person legally using the vehicle, with the owner's express or implied permission, does not extend the liability to the owner of an automobile to include acts of his employee, who, contrary to his instructions and without the scope of his employment, ''invites children for a ride, who are injured when the car is struck by a train.'' Judgment went for the plaintiff, and was reversed as to the owner of the automobile, though affirmed as to the driver.

In the recent case of *Monnet* v. *Ullman et al.,* 129 Or. 44 [276 Pac. 244, 247], it is held that the owner of a truck is not liable to one accepting an invitation from a truck driver, and who is injured, where there is no evidence of permission to carry passengers, the truck being used for the delivery of butter, eggs, etc., and patently not adapted or designed

for the transportation of passengers. In that case the opinion points out what is and is not in the course of the employer's business. It is there said: "It is true that if, in the course of the transaction of defendant's business, which necessarily involved driving along the highway, defendant's driver should perform that function so negligently as to run against one traveling on the road, or against such a person's vehicle, the defendants would be liable in damages, for the reason that the driver was authorized by his employer to drive on that road, and being so authorized, the employer assumed the burden of seeing that he drives safely." There was testimony in that case to the following effect: "That the driver was going down a grade at about thirty miles an hour; that the rate prescribed by the city of Kalama was twelve miles an hour, and that the pavement was wet and slippery; that a wood truck was crossing the highway from the west, and according to the plaintiff's evidence, had reached about the center of the highway when the accident occurred. If this evidence indicates a wilful intent to injure plaintiff, or wanton disregard for the consequences, the writer fails to see it. Taking the plaintiff's testimony as true, the driver was going down a rather steep grade at thirty miles an hour, when the rule required him to travel at twelve miles an hour, and in this he was negligent as a matter of law. He saw the truck coming across the highway at right angles to his course, and being, perhaps, unnecessarily alarmed for fear it would cross his path, swerved to the east, and being unable, on account of his speed, to stop his truck, ran to the edge of the highway and into the grade of Elm street, where the truck upset. He had as much at stake as his passenger; was, in fact, badly injured, and in an action by his passenger against him, his disregard of the rules of the city in driving at the prohibited rate of speed, would have justified the jury in finding him guilty of ordinary negligence, and requiring him to pay damages. But as against the defendant, plaintiff was not an invitee, because the driver had no authority to invite her," etc.

The excerpt which we have taken from this case concerning the course of employment of the driver of the automobile needs no elaboration to show that Winfrid Albers was not injured by the defendant Morton while Morton was in the course of his employment. Morton was employed

to drive the truck down the highway leading to the bridge where the accident occurred, to deliver gasoline and oil, and was not employed to transport either a guest, a licensee or a trespasser.

In the case of *Blood* v. *Austin,* 149 Wash. 41 [270 Pac. 103], the Supreme Court of Washington held that the following facts did not constitute gross negligence toward an invited guest: The car was being driven along a graveled road, the traveled portion being about twenty feet in width. At a point 250 feet from a curve there was a caution sign. The appellant testified that the respondent started to speed up at about 100 to 200 feet from the sign, at which time his speed was estimated at 30 to 40 miles an hour, when the defendant was asked to go slow. The curve was from 75 to 100 feet in length. In rounding the curve, the car ran against a railing on the left side, which gave way, causing the car to topple over. Upon approaching the curve, and within it, it appears that the right-hand side of the road had chuck holes or ice pockets, and in taking the curve, the car was driven along the center of the highway. The roadway was frozen and covered with loose gravel or rocks, causing a lateral skidding or sliding on the pebbles of the wheels of the car to the left, until the railing was struck. It was further held that the injury was not the result of wantonness on the part of the driver.

The defect in the steering-gear of the truck involved in this action is somewhat akin to defects in the braking equipment of automobiles. This defect has been considered by this court in the case of *Gilmore* v. *Caswell,* 65 Cal. App. 299 [224 Pac. 249], and *Latky* v. *Garcia,* 85 Cal. App. 332 [259 Pac. 470], and by the Supreme Court in the case of *Rocha* v. *Garcia,* 203 Cal. 167 [263 Pac. 238]. In all these cases, proof of such defect is held sufficient to establish the charge of negligence, and were that sufficient in this case, judgment of affirmance would follow as a matter of course.

The same ruling is had relative to defective brakes in the case of *Puhr* v. *Chicago & N. W. Ry. Co.,* 171 Wis. 154 [14 A. L. R. 1334, 176 N. W. 767]. There it was held that one approaching a railroad crossing at a rather high rate of speed, knowing that the brakes of his car were defective, was guilty of a high degree of negligence. Several cases are

cited in the annotations following the case just referred to, which adopt the same rule.

In *Collins* v. *Anderson*, 37 Wyo. 275 [260 Pac. 1089], the charge was that the defendant was driving a car with defective steering mechanism, and that he drove down a grade at twenty-five to thirty miles per hour, and that by reason of the defective steering-gear, the defendant lost control of the car, causing it to upset. An examination of the car after the accident revealed that one of the tires had become deflated. The court held that it was a question for the jury as to whether the driver of the car was guilty of negligence.

The Supreme Court of Wisconsin in the case of *O'Shea* v. *Lavoy*, 175 Wis. 456 [20 A. L. R. 1008, 185 N. W. 525], had before it the question of negligence in driving a car equipped with defective springs, and the liability of a driver to an invited guest. Negligent operation of the automobile was not involved. The court, in the consideration of that case, used the following language: ''We can see no difference between an invitation extended by a person to dine with him and an invitation extended to ride with him. It has been held by this court that in the former case the legal relation arising was that of licensor and licensee. (*Greenfield* v. *Miller*, 173 Wis. 184 [12 A. L. R. 982, 180 N. W. 834].) It follows that the same relation arises in the latter case, which conclusion is supported by authorities already cited. Whether or not the established rules of liability existing between licensor and licensee are applicable in the manner of the management of the automobile, they plainly are applicable so far as the condition of the automobile is concerned. According to those rules, the guest accepts the premises of his host as he finds them, subject only to the limitation that the licensor must not set a trap or be guilty of active negligence which contributed to the injury. Here, the accident happened, as said before, because of a broken spring, and the question was, Did that constitute a trap within the meaning of the rule? That is the only basis upon which liability could be predicated. A trap, within the meaning of this rule as we understand it, is a hidden danger lurking upon the premises which may be avoided if known. Hence, it is the duty of the host to advise his guest of its presence so that the guest may enjoy the premises in a security equal to that enjoyed by the

host. The guest has no right to a greater security than that enjoyed by the host or other members of the family. The host simply places the premises which he has to offer, at the disposal and enjoyment of his guest, upon equal terms of security. In this case the defendant considered the automobile to be in sufficient condition to make the trip. This is evidenced by the fact that he not only entrusted his own safety thereto, but that of his wife and children as well. There can be no stronger evidence of the belief of the ordinary well-meaning man in the sufficiency of the car to safely make the trip.'' It was further held that the circumstances detailed did not constitute gross negligence, and in the state of Wisconsin, the owner and driver of a car is not liable to guests for ordinary negligence, but only for gross negligence.

The same court, in the case of *Olson* v. *Hermansen*, 196 Wis. 614 [61 A. L. R. 1243, 220 N. W. 203], held that a host owes to his guest in an automobile the duty to exercise ordinary care not to increase the danger to the guest, or to create any new danger.

In *Marple* v. *Haddad*, 103 W. Va. 508 [61 A. L. R. 1248, 138 S. E. 113, 115], the Supreme Court of West Virginia holds that one who is carried gratuitously in an automobile, at his own request, takes the machine as he finds it, subject to the duty of the operator to warn such licensee of any known dangerous defect in the vehicle. In that case, we find the following language: ''Reasonable care for the safety of young Marple commenced only when he entered the truck. The defendant owed him no duty of prior inspection. He who enters an automobile to take a ride with the owner, also takes the automobile and driver as he finds them. A guest upon premises or in the vehicle of another must take such premises or vehicle as he finds them, subject to the exception that it is the duty of the owner to warn the guest of any trap known to the owner.'' (Citing the case which we have heretofore mentioned of *Carroll* v. *Yonkers*, holding that a city is not required to inspect cars to ascertain defects as against a mere licensee.)

In the case of *Puckett* v. *Pailthorpe*, 207 Iowa, 613 [223 N. W. 254], the Supreme Court of Iowa held that a charge of negligence, predicated upon one of the car doors being loose,

and failing to advise a guest, by reason of which the invited guest was injured, was sufficiently established.

In *Harbor* v. *Graham*, (N. J.) 61 A. L. R. 1232, 143 Atl. 340, the Court of Appeals of New Jersey, in a case involving gross negligence, held that poor judgment might amount to gross negligence, but would not constitute either wilfulness or wantonness. In that case the court further said: "Can it be that gross negligence contains any underlying element differentiating it in this respect from ordinary negligence? (That is, the exercise of judgment.) We think not. Both fall short of wilfulness, either actual or constructive, and as is pointed out in the Massachusetts case above quoted, differ from each other in degree only, rather than in quality. That this must be so we think is demonstrated by the fact that the later American cases, with practical unanimity, reject the doctrine that negligence is capable of division into the different degrees of slight, ordinary and gross negligence." The court then points out that certain cases make only the distinction between the negligence and what is called "wilful" negligence. The court further held that the facts detailed in that case establish gross negligence.

In *Mitchell* v. *Raymond*, 181 Wis. 591 [195 N. W. 855, 858], the Supreme Court of Wisconsin again reaffirmed its former holdings as to a guest accepting the premises just as they are found. It is there said: "By the present holding there is no intention to limit or withdraw anything that has been said heretofore in such cases as *Greenfield* v. *Miller*, 173 Wis. 184 [12 A. L. R. 982, 180 N. W. 834], and *O'Shea* v. *Lavoy*, 175 Wis. 456 [20 A. L. R. 1008, 185 N. W. 525], or to qualify the rule thereby recognized, namely, that the guest who comes upon the premises or enters into the vehicle of another, must take such premises or vehicle as he finds them, and as it pleases the owner, in the exercise of his right of dominion over his own property, to maintain the same, provided, of course, such owner does not fail in the duty of informing or warning the guest of that which must be considered a trap or concealed defect, or by no act of his, creates a new danger." The facts in that case were held only to establish ordinary negligence, and therefore, insufficient to create liability on the part of the defendant.

It will be observed that in all of the foregoing cases relative to the condition of the automobile, the injured party was

either a licensee or an invited guest, and not a trespasser, and even under such circumstances, liability was not established by any of the alleged defects, as they were not held sufficient to constitute gross negligence. It is also true that in the cases cited, and in the legion of cases referred to in the annotations found in the different volumes of American Law Reports to which we have referred, a very large percentage involve injuries to minors. In the case at bar, while the deceased was under the age of twenty-one years, he was in no sense a minor incapable of judging of the situation, and was in all respects in the same class with ordinary trespassers. He was warned that it was against the rules of the company to ride on the truck, and he had immediately facing him, while seated upon the uncushioned portion of the seat on the truck, a notice that employees only were entitled to ride there.

 In this state, negligence is now recognized as consisting of three classes, slight, ordinary and gross, all of which are distinguishable from either wantonness or wilfulness. Correctly speaking, wantonness and wilfulness are not negligence at all. They indicate a reckless conduct which has gone beyond, negligence constituting either of the three degrees, though in many of the cases, loose language appears, showing that the distinctions here mentioned have been lost to sight.

In 45 C. J. 674, section 38, we find the following: "When the terms are accurately used, there is a clear distinction between negligence and wantonness, in that mere carelessness or inadvertence may constitute negligence, whereas wantonness includes the elements of consciousness of one's conduct, intent to do or omit the act in question, realization of the probable injury to another, and reckless disregard of consequences. Accordingly, it has been said that wantonness and negligence are incompatible. Nevertheless, the term 'wanton negligence' is frequently used by the courts in expressing something more than ordinary negligence." Again, in the following section it is said: "That wilfulness and wantonness express different ideas and are clearly distinguishable, in that wilfulness includes the element of actual intent to inflict injuries, while in the case of wantonness, there is no such actual intent, but at most, an implied or constructive intent." In the same volume, on page 745, appears the fol-

lowing rule as to trespassers: "There is no duty to provide for the presence of trespassers, but a trespasser enters at his own risk, takes the property on which he enters, as he finds it. Therefore, the owner or person in charge of property owes to a mere trespasser thereon, no duty to keep the property in a suitable or safe condition, and is not under any obligations to remove hidden dangers, or to warn trespassers of their existence." This rule, of course, is subject to the exception heretofore noted as to traps.

In *Tognazzini* v. *Freeman*, 18 Cal. App. 468 [123 Pac. 540, 543], we find the following relative to negligence: "By 'negligence' is meant ordinary negligence—a term the significance of which is reasonably well fixed. By gross negligence is meant exceeding negligence—that which is mere inadvertence in a superlative degree. . . . By 'wilful negligence' is meant not strictly negligence at all, to speak exactly, since negligence implies inadvertence, and whenever there is an exercise of will in a particular direction there is an end of inadvertence, but rather an intentional failure to perform a manifest duty, which is important to the person injured, in preventing the injury, in reckless disregard of the consequences as affecting the life or property of another. Such conduct is not negligence in any proper sense, and the term 'wilful negligence,' if these words are to be interpreted with scientific accuracy, is a misnomer."

In *Crosman* v. *Southern Pac. Co.*, 44 Nev. 286 [194 Pac. 839], the Supreme Court of Nevada had occasion to consider the question of the alleged wanton and wilful negligence of a switching crew in backing an engine without a rear light, whereby the plaintiff was injured while riding on a handcar being propelled on a double track against the course of traffic. In that case the distinction is drawn between "negligence," "wilfulness" and "wantonness," substantially as herein stated.

In 19 California Jurisprudence, 555, considering the subject of wilful and wanton injury, the text-writer uses language somewhat less exact. It is there said: "It has been stated that there may be negligence and wantonness at the same time. Carelessness does not imply wantonness, but as wantonness may exist with intent to injure, it may imply carelessness. To do an act in reckless disregard of consequences, though not intending to do an injury, is to do the

act in a careless and negligent manner, and it would, under some circumstances, be wantonly done."

There is nothing in this case which indicates that the defendant Morton, as the driver of the truck belonging to the defendant Shell Company, in any degree apprehended that he was driving a truck attendant with any unusual dangers. That there are dangers inherent in automobile traffic is beyond question. The staggering array of damage suits found in the books is sufficient corroboration of this statement. No other instrumentality has so appealed to the fancy of the American public, or so revolutionized the habits and customs of the people, but its adoption and use has been coincident with fatalities mounting into the tens of thousands, and 'it may be truthfully said that everyone who starts upon an automobile ride, to some degree at least takes not only his personal security, but his life as well in his hands. However, these considerations are not sufficient to support verdicts in damage cases. All of the facts which we have considered were practically before the court upon the conclusion of the plaintiff's case, and the motion of the defendants for a nonsuit should have been granted. If the question of negligence only were involved in this case, we would be inclined to the view that the facts appearing in the record are sufficient to send the case to the jury, but as it manifestly fails to show any wilful or wanton act or omission on the part of the driver Morton, there is nothing in the case to support the verdict. The jury might be warranted in finding that the sending of the truck out on the highway with the nut missing from the top of the steering-post constituted negligence, but the evidence shows clearly that the deceased was a trespasser. We do not see how it can be found that the absence of the nut constituted anything which comes within the definition of a trap, and as the appellants could be found liable in damages only for some wilful or wanton misconduct, a verdict and judgment without the presence of one or the other of these elements cannot be sustained in this case. A "trap" is a term used to designate any very dangerous construction or condition designedly arranged to do injury. (*Moffatt* v. *Kenny*, 174 Mass. 311 [54 N. E. 850]; 38 Cyc. 948.)

While a jury might reasonably infer from the testimony in this case that the jar occasioned to the steering-wheel by

the driving of the truck upon the highway would tend to disengage the steering-wheel from the steering-post, the fact that the steering-wheel could not be lifted from the steering-post without the use of a hammer to tap the wheel on the underside the number of times mentioned enforces the conclusion that the driver was not acting either wilfully or wantonly, but might assume that the steering mechanism was reasonably safe for the uses and purposes for which the truck was intended.

By reason of what we have said, other alleged grounds for reversal need not be considered.

The judgment is reversed.

Finch, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 26, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 26, 1930.